[No. 875-3. Division Three. December 31, 1974.]

CARL A. ELLINGSEN et al., Respondents, v. WESTERN FARMERS ASSOCIATION, FARM FINANCING ASSOCIATION, Appellant.

Howard C. Lincoln (of MacBride, Sax & MacIver) and Fred R. Staples (of Staples & Felsted), for appellant.

Philip M. Raekes (of Loney, Westland, Raekes, Rettig & Sonderman), for respondents.

MUNSON, J.—This case arises out of a farm financing and leasing arrangement entered into by the Presos, who leased land from the Ellingsens, for the purpose of growing potatoes. Western Farmers Association, Farm Financing Association, hereafter referred to as WFA, provided production financing, and defendant, Lamb-Weston, Inc., a potato processing company, processed the potatoes grown upon the Ellingsen property by the Presos. The proceeds generated from the sale of the Presos' 1971 potato crop were inadequate to pay the indebtedness owing by the Presos to the Ellingsens and WFA. WFA appeals from a judgment granting the Ellingsens an interest in the proceeds generated from the sale of the 1971 potato crop, and the Ellingsens cross-appeal for failure to obtain a greater amount than awarded.

The Ellingsens and Presos entered into two written leases, a land lease on September 11, 1970, and a warehouse lease on August 17, 1971. Under the land lease the tenants, the Presos, were to pay the 1971 rent in two equal installments of $24,335. The first installment was paid; there remained owing $24,335 as the second half of the 1971 land rent. Under the warehouse lease agreement the Presos were to pay $25,000 rent on January 2, 1972.

The parties agree that the Ellingsens possessed a properly perfected landlord's lien as to the second installment. RCW 60.12.020.[1]

Western Farmers Association, who financed production of the Presos' 1971 potato crop, held a security interest therein, evidenced by a written security agreement, and perfected by filing a UCC-1 financing statement. This statement filed on November 13, 1970, did not have the proceeds box checked.

---

[1]"Every landlord shall have a lien upon the crops growing or grown upon demised premises in any year, for the faithful performance of the terms of the lease, and for the rent accruing or accrued for such year, whether such rent is to be paid wholly, or in part, in money, or in specific articles of property, or in the products of the premises, or in labor."

In December of 1971, potatoes were removed from the warehouse for processing by Lamb-Weston. Under the terms of the Ellingsen-Preso warehouse lease, no potatoes were to be removed until the warehouse rent had been paid. The Ellingsens contacted Lamb-Weston, Inc., and were advised of the schedule of payments to be made to the Presos. The Ellingsens then drafted a written agreement by which the Presos assigned to the Ellingsens certain monies to be due the Presos from Lamb-Weston for the 1971 crop. This agreement was signed by Lamb-Weston, the Presos, and the Ellingsens. WFA acknowledged receipt of a copy of this agreement, but they did not sign it.

In the written assignment, the Presos admitted to owing $25,000 in warehouse rent and $24,335 in land rent to the Ellingsens. The Presos authorized both rental debts to be paid from amounts due or to become due from Lamb-Weston. However, the agreement failed to contain any express direction by the Presos as to which of these debts was to be extinguished first.

On January 14, 1972, Lamb-Weston issued a check payable to the Presos, the Ellingsens and WFA for $22,603.12. This check was endorsed by all payees, including WFA, and deposited in the Ellingsens' account. Several weeks later the Ellingsens chose to apply the $22,603.12 towards the warehouse rent rather than to the land rent then due. WFA, upon endorsing this check, did not indicate their desire that the Ellingsens apply such proceeds toward the extinguishment of the land debt and not to the unsecured warehouse debt.

Later, an additional $74,489 in proceeds was generated from the sale of the 1971 potato crop. WFA refused to endorse the two checks evidencing this sum. Lamb-Weston ultimately stopped payment on the checks and deposited the $74,489 into the registry of the court.

The trial court concluded that the Ellingsens were entitled to apply the initial proceeds check of $22,603.12 toward the payment of the warehouse debt. The court held that

WFA did not hold a perfected security interest in the $22,603.12 because the proceeds box on WFA's financing statement had not been checked, originally, or within 10 days of receipt of the proceeds by the debtor Presos. RCW 62A.9-306(3).[2] The trial court then found that $24,335 of the $74,489 was properly owing to the Ellingsens under their preferred landlord's lien pursuant to RCW 60.12.020 and RCW 60.12.030.[3] The balance, $50,154, was awarded to WFA pursuant to their security interest, on the basis that this sum could not be said to have been received by the debtor Presos because WFA had refused to endorse the check, Lamb-Weston had stopped payment thereon, and the total sum had been paid into the registry of the court. Having concluded that the debtors had not received the proceeds, the court held the 10-day perfection period (RCW 62A.9-306(3)) had not commenced to run; and WFA was entitled to perfect its interest in the proceeds, amounting to $50,154.

WFA contends the Ellingsens were not entitled to apply the $22,603.12 toward the payment of an unsecured warehouse rent debt; rather it should have been applied to the land rental, secured by a landlord's lien. We do not agree.

■ The general rule is that one who receives a payment without direction as to how it should be applied, may apply the payment to any debt he holds. *Diettrich Bros.,*

---

[2] "(3) The security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it ceases to be a perfected security interest and becomes unperfected ten days after receipt of the proceeds by the debtor unless

"(a) a filed financing statement covering the original collateral also covers proceeds; or

"(b) the security interest in the proceeds is perfected before the expiration of the ten day period.

[3] "The liens provided for in this chapter shall be preferred to any other encumbrance upon the crops to which they attach. The seed lien provided for in this chapter shall be superior to any lien except a labor lien. Such a lien or right of lien and the right of action therefor shall be assignable so as to vest in the assignee all rights and remedies of the assignor, subject to all defenses thereto that might be made if the assignment had not been made."

*Inc. v. Anderson*, 183 Wash. 574, 48 P.2d 921 (1935); *Post-Intelligencer Publishing Co. v. Harris*, 11 Wash. 500, 39 P. 965 (1895); *Frazer v. Miller*, 7 Wash. 521, 35 P. 427 (1893). An exception exists when the money received for payment of a debt is known to the creditor to have been derived from a particular source; then the creditor may not, in the absence of consent by the debtor, apply the proceeds to a debt unrelated to the source from which such proceeds were generated. *Cummings v. Erickson*, 116 Wash. 347, 199 P. 736 (1921); 70 C.J.S. *Payment* § 64, at 268 (1951).

The trial court concluded that the written assignment did not serve to direct how the proceeds were to be applied. In the absence of direction on the part of the debtor Presos indicating the order of preference in which each of the two debts was to be extinguished, the general rule is said to apply. However, it is the position of WFA that the exception to the rule is applicable here. We find the exception to be inapplicable for the following reasons:

(1) The exception to the general rule is said to apply only in those cases where the debtor fails to consent to the application of the proceeds toward the extinguishment of a separate debt. We find from the evidence that the debtor Presos while not having directed the manner or order in which these two debts were to be extinguished, nevertheless consented to the application of the proceeds generated from the 1971 potato crop toward the extinguishment of either debt. This consent is evidenced by the assignment agreement, signed by the Presos, which specifically set forth allocations for warehouse rent in addition to that of the land rent. By this agreement, the Presos acknowledged both debts were owing to the Ellingsens. They realized the payment of such debts was to result entirely from the sale of the potatoes grown upon the property they leased from the Ellingsens. The effect of this assignment was to manifest consent on the part of the Presos toward the payment of both the warehouse debt, as well as the land debt, from a single source of funds generated from the processing and

sale of the 1971 potato crop. The exception to the general rule is inapplicable; the debtors had consented to payment of these two debts from a single source of funds.

(2) Both debts became so interrelated that the exception to the general rule is inapplicable. The exception requires that the debts be of a separate and distinct nature, derived from separate sources and not subject to payment from a single fund. This case does not evidence that situation. On the contrary, both debts arose out of the tenants' production, processing and sale of a single potato crop. Not only were these two debts derived from the same source, but in addition, the proceeds received on the sale of that source were to be used for the extinguishment of both debts. Because the warehouse debt cannot be said to be unrelated to that of the land rent, the exception to the general rule is inapplicable. *Sainsbury v. Wapato Fruit & Cold Storage Co.*, 132 Wash. 455, 232 P. 331 (1925).

WFA further contends that their failure to perfect a security interest in the $22,603.12 caused the trial court to conclude that WFA was thereby prohibited from questioning the propriety of application of this check toward payment of the warehouse debt. We disagree. The trial court afforded each party a complete and thorough opportunity to present their theories of the case and properly concluded, as a matter of law, that the Ellingsens were entitled to apply the $22,603.12 toward the extinguishment of the warehouse debt. Having affirmed this holding, we need not consider the additional contentions raised by WFA on this assignment of error.

It is the contention of the Ellingsens in their cross-appeal that the statutory landlord's lien provided in RCW 60.12.020, when coupled with the contractual provision in the Presos' lease served to extend the landlord's lien to years other than that in which the crop was grown. The trial court concluded that RCW 60.12.020 provides for a lien only in that year in which the crop is grown. We agree. *Cf. American State Bank v. Sullivan*, 134 Wash. 300, 307, 235 P.

815 (1925). In addition, the trial court concluded that the contractual provisions between the Ellingsens and the Presos were not intended to extend the provisions provided for in the statutory lien right but were merely complementary thereto. Whether the parties intended to expand upon the statutory lien right granted by RCW 60.12.020, if possible, was a question of fact properly before the trial court. Findings of fact which are supported by substantial evidence will not be reviewed on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). Substantial evidence exists to support the finding by the trial court.

In reviewing the extensive record, the exhibits, the thorough consideration given by the trial court judge, and the briefs of counsel, we find no error.

Judgment affirmed.

GREEN, C.J., and MCINTURFF, J., concur.