716 F.2d 168
 9 Collier Bankr.Cas.2d 359, 11 Bankr.Ct.Dec. 131,
Bankr. L. Rep. P 69,340
 In re James E. COMER and Martha E. Comer, his wife, Debtors.
Lefferage B. MOXLEY a/k/a Pete Moxley, and Anna Pauline
Moxley, Appellees,
v.
James E. COMER and Martha E. Comer, Appellants.
 No. 82-3469.
 United States Court of Appeals,
Third Circuit.
 Argued May 10, 1983.
Decided Aug. 26, 1983.
 
 William C. Anderson (argued), Anderson, Converse & Fennick, York, Pa., for appellants.
 Gilbert G. Malone (argued), Malone & Neubaum, York, Pa., for appellees.
 Before ADAMS and WEIS, Circuit Judges, and DEBEVOISE, District Judge*.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 In this case we conclude that we have jurisdiction to hear an appeal from a district court order that lifted the automatic stay provided by the Bankruptcy Reform Act against a lien enforcement action. The district court found that the bankruptcy judge had erred in allocating a series of pre-bankruptcy payments by debtors to mortgages rather than to unsecured obligations. We agree with the district court's reasoning but direct a remand to the bankruptcy judge for findings of fact on one transaction that might affect the creditors' security and the validity of the stay modification.
 
 
 2
 Debtors James and Martha Comer were in the residential home construction business when they filed a Chapter 11 bankruptcy petition on February 13, 1981. Two weeks later, creditors Lefferage and Anna Pauline Moxley sought modification of the automatic stay imposed under section 362 of the Bankruptcy Code so they could foreclose on several mortgages they held on the debtors' real estate.[1] After a hearing, the bankruptcy judge denied the application in an order entered on March 30, 1982, and creditors appealed the decision to the district court. In an opinion dated September 28, 1982, the district court determined that the bankruptcy judge's findings were clearly erroneous, lifted the stay as to one lot, and remanded the case for reconsideration.
 
 
 3
 Debtors secured a significant amount of the financing for their home building from creditors who are appellees here. Debtors owned three parcels of land in York County, Pennsylvania and creditors held a mortgage on each one as security for construction loans. They also held promissory notes evidencing unsecured sums advanced for the financing of structures on two of the parcels. In addition, when debtors were unable to pay the interest on the three mortgages, creditors took a note for the amount due and entered judgment on it in November 1979.
 
 
 4
 For purposes of construction and resale, each parcel was subdivided into three lots.[2] When construction on a lot was complete and it was sold, debtors paid a portion of the sale proceeds to creditors, who then released that particular lot from the parcel-wide mortgage. In the exchange, creditors also returned promissory notes evincing unsecured advances for construction on the parcel containing the lot being sold. At the time the Chapter 11 petition was filed, two lots in parcel 1, one in parcel 2, and one in parcel 3 remained unsold.
 
 
 5
 The situation in parcel 2 illustrates the problem presented to the bankruptcy court by the request to modify the automatic stay. The mortgage on that parcel was $90,000 and unsecured loans totaled $48,000. When lot 31 was sold in September 1978, creditors received $40,000. Lot 30 was sold in November 1979 and creditors were paid $54,223. Thus, creditors received a total of $94,223 from the sale of the two lots. They contended that they first applied this amount against unsecured loans and the remainder to the mortgage. According to the creditors' contention, therefore, the unsecured debt on parcel 2 had been paid in full and an amount in excess of the value of lot 32 was owed on the mortgage obligation, including the remaining principal of $43,777, accrued interest, and attorney's commission.
 
 
 6
 The bankruptcy judge, however, took a different view. He concluded that in parcel 2, for example, the total of $94,223 should be applied first to the mortgage of $90,000, thus extinguishing it. The remaining $4,223 was applied to the unsecured debt. A similar conclusion was reached as to parcel 3, resulting in the satisfaction of the mortgage and some reduction in the unsecured indebtedness.
 
 
 7
 The bankruptcy judge reasoned that although the parties had no express written agreement on the allocation of payments, there was an implied understanding to apply the funds against the secured debt. He drew that inference from the practice of releasing the lot being sold from the mortgage. In addition, the bankruptcy court concluded that since a trustee has the status of a hypothetical lien-creditor under section 544 of the Bankruptcy Code, he could demand allocation of the payments "in the way most beneficial to him to the extent that the parties had not previously applied the proceeds." In this instance, application against the secured debt would be the most beneficial arrangement for a lien-creditor.[3]
 
 
 8
 Creditors received $22,000 from the sale of lot 28. They contended that, unlike the other transactions, they specifically requested allocation of these funds to the judgment note for interest due on the mortgage. However, the bankruptcy judge concluded that in this instance also creditors had allocated the money to the mortgage on parcel 1.
 
 
 9
 The net effect of the findings by the bankruptcy court was that payments were found to be allocated to the secured debt, and as a result, the bulk of the secured debt was viewed as extinguished. As a consequence, debtors had equity in the property and the creditors' remaining secured interest was adequately protected. Accordingly, the bankruptcy court concluded that the statutory requirements for lifting the automatic stay were not satisfied.[4]
 
 
 10
 In contrast, the district court found that the creditors' conduct demonstrated allocation of the proceeds to the unsecured debt and held that the bankruptcy judge's findings on this point were clearly erroneous. The district judge pointed to the uncontroverted evidence that creditors had returned the promissory notes covering the unsecured advances but had never satisfied any of the mortgages. These facts convinced the district judge that payment had first been made against the unsecured debt and only the remainder had been applied to the mortgages. The district court also concluded that debtors had acquiesced in the crediting of $22,000 from the sale of lot 28 to the amount due on the judgment note for mortgage interest.
 
 
 11
 Finding little or no equity in lot 32, and that the lot was not necessary for reorganization, the court lifted the stay on it. As to the other lots covered by the stay, the case was remanded for "reconsideration not inconsistent with this decision."[5]
 
 
 12
 * We first consider whether this appeal is properly before us. Because the case arises under the Bankruptcy Reform Act of 1978, we examine that statute for a jurisdictional basis. Although portions of the Act do not go into effect until April 1, 1984, the courts are vested during the transitional phase with the appellate authority they will have after that date. In re Marin Motor Oil, Inc., 689 F.2d 445, 447-48 (3d Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983); Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 100 n. 2 (3d Cir.1981); see Pub.L. 95-598, title IV, Sec. 405(c)(2), 92 Stat. 2685 (transitional provision of Act vesting courts with appellate authority). But see In re Cantwell, 639 F.2d 1050, n. 3 (3d Cir.1981) (dictum).
 
 
 13
 Because of our disposition of the jurisdictional issues in this case, we need not consider whether jurisdiction in the court of appeals also lies under 28 U.S.C. Secs. 1291 and 1292, and we need not decide whether the Supreme Court's decision in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., --- U.S. ----, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), should be applied retroactively. Cf. Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190 (3d Cir.1983) (using sections 1291 and 1292 as jurisdictional bases and applying interim reference rule retroactively).
 
 
 14
 Section 1293(b) of Title 28 provides that in bankruptcy cases the court of appeals "shall have jurisdiction of an appeal from a final judgment, order or decree of ... a District Court."[6] Although this provision incorporates a finality requirement, "it is not clear that this requirement must in all circumstances be given the same construction that it would have under [28 U.S.C. Sec.] 1291." Marin Motor Oil, 689 F.2d at 448. Considerations unique to bankruptcy appeals have, in the past, led us to conclude that "we need be somewhat less concerned about the dangers of interpreting finality in appeals under section 1293(b) slightly more broadly than in appeals under section 1291." Id. at 449. See also In re Saco Local Development Corp., 711 F.2d 441 (1st Cir., 1983).
 
 
 15
 In Universal Minerals, Inc. v. C.A. Hughes & Co., this court treated a judgment as final under section 1293 because "nothing remained for the district court to do" and "reversal of its judgment 'would be preclusive of any further litigation on the relevant cause of action.' " 669 F.2d at 101 (quoting Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 482-483, 95 S.Ct. 1029, 1039-1040, 43 L.Ed.2d 328 (1975)). We also referred to Radio Station WOW v. Johnson, 326 U.S. 120, 65 S.Ct. 1475, 89 L.Ed. 2092 (1945), which held a judgment was reviewable when it directed immediate delivery of physical property because that act was disassociated from and unaffected by a provision in the same order remanding for an accounting. Thus, in our determination of whether a district court's order is final for purposes of section 1293(b), Universal Minerals suggests a pragmatic approach that looks at the effect of the district court's ruling. See also Marin Motor Oil, 689 F.2d at 448-49.
 
 
 16
 In the case at hand, the district court's order lifting the stay as to lot 32 is final in the sense that it completes litigation on the question and subjects the property to a foreclosure action in state court. Nothing more need be done by the district court or the bankruptcy court on the matter of the automatic stay, and the order of the district court ends this particular controversy between debtors and creditors. Moreover, testimony at the hearing indicates that foreclosure on the lots in question may require that the proceeding be converted from a Chapter 11 reorganization to a Chapter 7 liquidation.
 
 
 17
 The matter here is not one that can await final resolution of the bankruptcy proceedings. It seems clear, therefore, that although the bankruptcy case will continue, the district court's order is final in the sense that this particular controversy will not return to the court and effective review of the order lifting the stay cannot await final disposition of the case in the bankruptcy court.
 
 
 18
 This situation is quite different from Growth Realty Cos. v. Regency Woods Apartments (In re Regency Woods Apartments, Ltd.), 686 F.2d 899 (11th Cir.1982), a decision dismissing an appeal from a district court order modifying an automatic stay order of the bankruptcy court. In that case, the district court remanded to the bankruptcy court, ordering both an accounting of the debtor's use of cash collateral, and a lifting of the stay if the debtor could not compensate the creditors for the loss of their collateral. The court of appeals reasoned that since the order lifting the stay was contingent, no important interest as yet required the decision to be considered final. Here, by contrast, the substance of the stay proceedings as to lot 32 is complete in both the district and bankruptcy courts and important rights of the parties have been determined.
 
 
 19
 It must be understood, however, that the question of appealability is not resolved by the determination that a particular matter will not require further adjudication in the district court. Universal Minerals did not intend that factor to be the sole consideration.
 
 
 20
 For example, a purely interlocutory order of the bankruptcy court, such as a discovery order, might be entertained by the district court as an interlocutory appeal, "by leave" of that court under 28 U.S.C. Sec. 1334(b). See International Horizons, Inc. v. Committee of Unsecured Creditors (In re International Horizons, Inc.), 689 F.2d 996, 1000 (11th Cir.1982). The district court's appellate decision would be final in the sense that its work is finished and, in all likelihood, the court would not be called upon to resolve that issue again. Nevertheless, that order would not be final so as to permit review by the court of appeals. In substance, the matter would be interlocutory and one that we would not entertain under section 1293. See id. at 1000-01; Bello Broadcasting v. Rubin (In re Rubin), 693 F.2d 73, 76 (9th Cir.1982). See also Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 441 n. 1 (9th Cir.1983).
 
 
 21
 All that would be resolved in the example above is a discovery matter, traditionally regarded as interlocutory because the merits of the underlying proceeding have yet to be decided. See In re W.F. Breuss, Inc., 586 F.2d 983, 985-86 (3d Cir.1978); Borden Co. v. Sylk, 410 F.2d 843, 845-46 (3d Cir.1969). In short, even if the disposition by a district court is final as to an issue, the substance of the controversy might remain interlocutory and would not be appealable to this court.
 
 
 22
 If, however, the bankruptcy court's order is final, it puts a different complexion on the case. As we observed in Marin Motor Oil Corp., "when the bankruptcy court issues what is indisputably a final order, and the district court issues an order affirming or reversing, the district court's order is also a final order for purposes of Sec. 1293(b)." 689 F.2d at 449. This test also supports the conclusion that the order at issue here is final and appealable.
 
 
 23
 We note that appeals from final orders of the bankruptcy court may be taken of right to the district court under section 1334(a).[7] Appeals of interlocutory orders are reviewed only by leave of the district court under section 1334(b). The parties did not ask for leave to appeal to the district court nor was such leave granted sua sponte. See Interim Bankruptcy Rules, Rule 8004(a) and (d).[8] We may assume, therefore, that the district court and the parties treated the appeal as taken under section 1334(a) from a final order of the bankruptcy court. That circumstance, however, does not end the inquiry into whether the bankruptcy court order in fact qualified as final under subsection (a).
 
 
 24
 Section 1334 does not squarely address the issue of appeals from orders granting or denying a request to lift the automatic stay--a matter of substantial importance in Chapter 11 proceedings. Moreover, as the majority opinion in Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d at 200 n. 7, points out, resolution of the differing Senate and House bankruptcy bills by the floor managers resulted in some ambiguity in the appellate jurisdiction intended by Congress in its drafting of section 1293.[9]
 
 
 25
 COLLIER ON BANKRUPTCY reads the legislative history as indicating that automatic stay orders should be treated for purposes of appeal as interlocutory. 1 COLLIER ON BANKRUPTCY p 3.03[e] (15th ed. 1983). Collier correctly states that the original House bill provided for direct appeals of all bankruptcy court orders to the court of appeals and that 28 U.S.C. Sec. 1292(a)(1) was to be amended to allow for the appeal of certain interlocutory orders. Id. at 3-312; see H.R. 8200, 95th Cong., 1st Sess. Secs. 237, 238 (1977).[10]
 
 
 26
 The treatise then observes that the House report analogized the three-stage stay procedure to the typical civil proceeding that ultimately results in a permanent injunction. "The stay has been likened to a temporary restraining order; the preliminary hearing ... to a hearing on a preliminary injunction, and the final hearing and order to a permanent injunction." 1 COLLIER ON BANKRUPTCY p 3.03[e] at 3-312 (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 344 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6300). Based on this analogy and the failure of the compromise bill to adopt the House amendment to section 1292, the commentary seems to conclude that injunctions, and thus stay orders, are not final orders and therefore require leave to appeal to the district court.
 
 
 27
 COLLIER appears to be in error on this point because section 1292(a), by its terms, applies only to interlocutory orders. It follows that if a permanent injunction is final, an appeal can be had without resort to section 1292(a). The Court of Appeals for the Second Circuit, taking issue with COLLIER's conclusion, addressed the question in the context of an automatic stay. The court treated the denial of relief from the stay as a permanent injunction that was appealable under section 1334(a). "We cannot agree [with COLLIER's analysis]. An order granting a permanent injunction is a final order. See Vicksburg v. Henson, 231 U.S. 259, 266-67, 34 S.Ct. 95, 97-98, 58 L.Ed. 209 (1913). Congress manifestly intended to treat final denial of relief from the automatic stay as a final order." Di Pierro v. Taddeo (In re Taddeo), 685 F.2d 24, 26 n. 4 (2d Cir.1982); see also Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306 (11th Cir.1982).
 
 
 28
 We caution that in some instances a permanent injunction that did not dispose of all the matters at issue might not be final under section 1291. Under the facts of this case, however, we agree with the courts in Taddeo and Borg-Warner that a bankruptcy judge's denial of relief from the automatic stay is a final order appealable under section 1334(a). See also Farmers & Merchants Bank & Trust v. Trail West, Inc., 28 B.R. 389, 391-92 (D.C.D.S.D.1983). The bankruptcy judge's order, resting on an erroneous finding of past events, became the law of the case in that court and resulted in a diminution of the creditors' secured debt. Creditors were precluded from foreclosing on their mortgages and the effect of the order, therefore, was to make a reorganization possible at the expense of the creditors' interests. Moreover, as we noted in our discussion of section 1293, review which sufficiently protects the party's rights cannot be had at the close of the bankruptcy proceedings.
 
 
 29
 In the context of appealability in the bankruptcy area, the order in this case may appropriately be considered final for purposes of section 1334(a).[11] Since the order of the district court is also final, this court has jurisdiction to consider the appeal.
 
 II
 
 30
 We turn then to the merits. Our first matter for consideration is the appropriate standard of review. As with so much of the Bankruptcy Reform Act after Northern Pipeline, uncertainty is the norm.
 
 
 31
 In response to the Supreme Court's decision holding the Article III jurisdiction of the bankruptcy court unconstitutional, the district court for the Middle District of Pennsylvania adopted the interim rule recommended by the Judicial Conference of the United States,[12] effective December 24, 1982, the date the Supreme Court's stay in Northern Pipeline expired. That rule provides that in an appeal from a bankruptcy judge's order, "the district judge need give no deference to the findings of the bankruptcy judge." Before adoption of this rule, however, review by the district judge was governed by the clearly erroneous test. See Bankruptcy Rule 810.[13] The case at hand was reviewed by the district court before adoption of the interim rule and the judge applied the clearly erroneous standard. Since the parties and the district court proceeded on the assumption that the clearly erroneous standard applied, we do so also. But cf. Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190 (3d Cir.1983) (interim rule may be applied retroactively in "related" proceedings to establish jurisdiction under sections 1291 and 1292).
 
 
 32
 There appears to be little dispute between the parties that the applicable law on the substantive issue of allocation was stated by the Superior Court of Pennsylvania in Page v. Wilson, 150 Pa.Super. 427, 433, 28 A.2d 706, 709 (1942), and later quoted with approval by the Pennsylvania Supreme Court in Woods Trust, 350 Pa. 290, 294, 38 A.2d 28, 30 (1944). The rule is stated as:
 
 
 33
 "The debtor has the right to make the application in the first instance, and failing to exercise it, the same right devolves upon the creditor. When no application is made by either party, the law determines how the payments are to be applied in accordance with equitable rules and principles .... [I]t will apply the payment, when not appropriated by either party, in the way most beneficial to the creditor, that is, to the debt least secured, unless to the prejudice of a surety."
 
 
 34
 See also Toll-Barkan Co. v. Toll, 193 Pa.Super. 221, 225, 164 A.2d 36, 38 (1960); RESTATEMENT (SECOND) OF CONTRACTS Secs. 258, 259, 260 (1981).
 
 
 35
 The bankruptcy court gathered that there was an agreement to apply the payments first to the mortgage debt because each lot sold was released from the mortgage lien in exchange for a substantial portion of the sale proceeds. The district court judge, however, determined that this conclusion was clearly erroneous, and we agree.
 
 
 36
 As the district judge observed, the uncontroverted facts establish a course of conduct demonstrating that the sale proceeds were first applied by creditors to the unsecured debts. This was shown by the creditors' return of the unsecured notes to debtors when a specific lot was sold. The unsecured debt represented by the notes was thus extinguished by the return of the notes.
 
 
 37
 The only conduct of creditors contrary to this conclusion applies to lot 30. Upon receiving the sale proceeds, Mrs. Moxley gave the debtors a receipt stating: "Received ... on mortgage." (Emphasis added.) However, neither the bankruptcy court nor the district court even mentioned the wording of the receipt. Moreover, any inference from it is overcome by the return of the promissory notes and creditors' consistent course of conduct. Clearly, debtors could not have assumed that, in exchange for approximately $54,000, creditors would reduce the mortgage by that amount and also extinguish a substantial amount of the unsecured debt.
 
 
 38
 The release of the mortgage lien on a lot being sold did not have the significance attributed to it by the bankruptcy judge. As the district court noted, release of one lot from the lien covering several lots did not work a satisfaction of the mortgage. The lien was still effective as to the remaining lots and the mortgage remained valid although it covered less property. As a practical matter, release of the lot being sold was essential in order to convey clear title.
 
 
 39
 The failure to satisfy the mortgage of record or return the mortgage documents to debtors is strong evidence of the creditors' application of the proceeds to the unsecured debt and is completely consistent with the return of the promissory notes. The district court's conclusion that the bankruptcy judge's decision was erroneous finds ample support in the record insofar as it speaks to the application of the payments between secured and unsecured debts.
 
 
 40
 Indeed, if there were no indication that creditors had taken steps to show their intention, the Page rules of construction would be applicable. The preference given for the benefit of the creditor by applying the payments "to the debt least secured" would come into play.
 
 
 41
 We reject the debtors' contention that this preference, as well as the creditors' freedom of application, is limited in this case by a rule requiring that money "from a particular fund ... must be applied ... in relief of the source from which the fund arose." Pardee v. Markle, 111 Pa. 548, 555, 5 A. 36, 40 (1886). Debtors urge that under this rule proceeds derived from the sale of land must be applied to the mortgage debt of that land, as opposed to an unrelated indebtedness. That argument is unavailing here because both the secured and unsecured funds were used to finance construction on the lots at issue. See Ellingsen v. Western Farmers Association, 12 Wash.App. 423, 529 P.2d 1163, 1167 (1974).
 
 
 42
 The bankruptcy court's alternative reason for its decision was that the debtor in possession, having the rights of a hypothetical lien-creditor under section 544, could require an appropriation of the proceeds that takes into account the interests of a lien-creditor. Here, such a creditor would be benefitted by an application of the proceeds to the secured debt because then the parcels would not be encumbered by the mortgages. The land would thus be available for reorganization or for claims of unsecured creditors.
 
 
 43
 However, as the bankruptcy court recognized, payments could be allocated under this theory only "to the extent that payments were not previously applied by either of the parties." Since application was made by creditors at the time the proceeds were received, a subsequent lien-creditor cannot upset this allocation. We need not decide whether, in the absence of a finding of allocation by a party, the debtor in possession would have the right to force a post hoc allocation favorable to himself.
 
 
 44
 The district court's rationale on allocation not only applies to lot 32 but also to lots 30, 31, 33 and 35. In agreeing with the court's conclusion as to lot 32, we necessarily accept the result reached as to the allocation of the proceeds from these four other lots. The record with respect to the payments made on the sale of lot 28, however, presents a variation on the theme.
 
 
 45
 Creditors were paid $22,000 on the sale of lot 28. The bankruptcy judge found that creditors applied this amount in partial satisfaction of the mortgage on parcel 1. This conclusory statement is the only reference in his findings and conclusions bearing on the allocation of that particular sum. The transcript of the testimony, however, reveals that creditors and debtors are in sharp conflict on the application of this fund.
 
 
 46
 Creditors assert that at the closing for the sale of lot 28 they specifically asked that the check to them reflect that the money was to be applied toward the satisfaction of the judgment for interest due on the mortgages. As mentioned earlier, when the interest payments on the mortgages became delinquent, debtors signed a note on which judgment was entered in November 1979.[14] Creditors say that the proceeds were applied against this judgment rather than toward the mortgage on parcel 1. They contend that the check issued by the attorney disbursing the proceeds at the settlement recites this allocation and is documentary evidence of their position.
 
 
 47
 Debtors, to the contrary, assert that the attorney had no authority to agree to such an allocation and that they were not present when creditors made their request. There was testimony on these points at the hearing, but the bankruptcy judge made no findings on any of them. Seemingly, he found no need to do so because of his view that in this instance, as in the others, application was first to be made to the outstanding mortgage balance.
 
 
 48
 The district judge, however, found that the finding was erroneous and that the amount should be credited to the note. In effect, the district judge made findings of fact based on the transcript in the absence of action by the bankruptcy judge. The proper procedure would have been to remand the dispute as to lot 28 to the bankruptcy judge for specific findings of fact, including consideration of the fact that in order to convey clear title at the March 1980 closing, the judgment would have had to be satisfied or released.
 
 
 49
 Because there must be a remand to determine the proper allocation of the proceeds from lot 28, the district court order lifting the stay on lot 32 must also be vacated and that matter remanded to the bankruptcy court. Although we agree with the district court's conclusion on the application of the proceeds from the sale of lot 32, the bankruptcy court's decision on remand on the lot 28 allocation issue may affect the determination of whether the stay on lot 32 should be lifted. The extent of the debtors' equity in lot 28 may be a factor in determining whether lot 32 is necessary for an effective reorganization and whether the creditors' interest in lot 32 can be adequately protected. See 11 U.S.C. Sec. 362(d). These matters are for the bankruptcy court in the first instance.
 
 
 50
 Finally, debtors suggest that the district court decision should be vacated and the appeal to that court dismissed because creditors failed to seasonably file the designation of the contents of the record and a statement of issues as required by Bankruptcy Rule 806. The district court declined to dismiss the appeal on the basis of a four-day delay, finding no prejudice to debtors or bad faith on the part of the creditors. We find no error in the district court's ruling on this issue. Not every failure to follow procedural rules mandates dismissal of the appeal. See e.g. Spartacus, Inc. v. Borough of McKees Rocks, 694 F.2d 947, 949 n. 6 (3d Cir.1982); Kirby v. United States, 675 F.2d 60, 62 n. 3 (3d Cir.1982); see also Third National Bank v. Winner Corp. (In re Winner Corp.), 632 F.2d 658, 660-61 (6th Cir.1980).
 
 
 51
 Accordingly, the order of the district court will be vacated and the case will be remanded with instructions to remand to the bankruptcy court for proceedings consistent with this opinion.
 
 
 
 *
 The Honorable Dickinson R. Debevoise, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 The automatic stay provision of the Bankruptcy Code, 11 U.S.C. Sec. 362 (1980 Supp. IV), reads in part:
 "(a) [A] petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of--
 * * *
 (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
 (3) any act to obtain possession of property of the estate or of property from the estate;
 (4) any act to create, perfect, or enforce any lien against property of the estate;
 (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
 * * *
 (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
 (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
 (2) with respect to a stay of an act against property, if--
 (A) the debtor does not have an equity in such property; and
 (B) such property is not necessary to an effective reorganization."
 
 
 [2]
 The three lots in parcel 1 were numbered 27, 28 and 29. Those in parcel 2 were numbered 30, 31 and 32, and the lots in parcel 3 were designated 33, 34 and 35
 
 
 [3]
 Section 1107 of the Bankruptcy Code gives a debtor in possession the rights, powers and duties of a trustee. This includes the status conferred by Sec. 544. 5 COLLIER ON BANKRUPTCY p 1107 at 1107-5 to 1107-6 (15th ed. 1983). The bankruptcy court would have been more precise if it had referred to the "debtor in possession" rather than to the "trustee" as having the status of a hypothetical lien-creditor
 
 
 [4]
 See 11 U.S.C. Sec. 362(d) at note 1
 
 
 [5]
 In various parts of the record it is stated that lot 32 has been sold to a third party, thereby suggesting that the dispute on the foreclosure issue is now moot. At oral argument, however, debtors stated that the property was "sold" on a sales agreement of some nature and that the buyers were attempting to get a mortgage. Since it has not been judicially established that the sale is complete or that debtors are free from the threat of foreclosure on this lot, we do not consider the matter moot
 
 
 [6]
 This section also applies to appeals from appellate panels composed of bankruptcy judges. See 28 U.S.C. Secs. 160, 1482. No panels of that nature have been authorized in this circuit and no further reference to them will be made in this opinion
 
 
 [7]
 28 U.S.C. Sec. 1334 provides in pertinent part:
 (a) The district courts ... shall have jurisdiction of appeals from all final judgments, orders, and decrees of bankruptcy courts.
 (b) The district courts ... shall have jurisdiction of appeals from interlocutory orders and decrees of bankruptcy courts, but only by leave of the district court....
 
 
 [8]
 Rule 8003 of the new bankruptcy rules governs appeals by leave as of August 1, 1983, the effective date of the new rules
 
 
 [9]
 An authoritative commentary describes the appeal provisions as "nearly incomprehensible," leaving appeals from the district courts "in a sorry state of uncertainty." 16 C. Wright, A. Miller, E. Cooper & E. Gressman, FEDERAL PRACTICE & PROCEDURE Sec. 3926 at 39 (1982 Supp.). The treatise discusses three possible interpretations of Sec. 1293(b). Id. at 40-42
 
 
 [10]
 28 U.S.C. Sec. 1292(a)(1) grants jurisdiction to the court of appeals from "[i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing, or dissolving injunctions or refusing to dissolve or modify injunctions...." Section 238 of the House bill would have amended section 1292 by granting the power of review over the same orders of the bankruptcy court
 
 
 [11]
 It is conceivable, however, that an order of the bankruptcy court denying relief from an automatic stay might, in some instances, be interlocutory and remain so by an order of the district court affirming the decision in an appeal under section 1334(b). The complexity of the problem and the remedy devised in Coastal Steel illustrate the need for statutory clarification of this matter by Congress
 Our jurisdiction, as conferred by Sec. 1293, extends only to final orders under Sec. 1334(a). Thus, as we read the statute, interlocutory orders appealable by leave of the district court under Sec. 1334(b) are generally not then appealable to a court of appeals. However, the action of the district court could transform an interlocutory order of the bankruptcy court into a final appealable order for purposes of our jurisdiction.
 For example, an order of the bankruptcy court granting intervention is not a final appealable order. If the district court on appeal reversed the bankruptcy court and denied intervention, the decision of the district court would be a final appealable order. Cf. Marin Motor Oil, 689 F.2d at 447-48 (bankruptcy court denial of intervention a final order; district court's reversal, although not usually a final order, held appealable).
 
 
 [12]
 For a discussion of the history and general framework of the Judicial Conference rule, see White Motor Corp. v. Citibank, N.A., 704 F.2d 254, 256-57 (6th Cir.1983)
 
 
 [13]
 The new bankruptcy rules, effective August 1, 1983, reinstate this standard of review. See Rule 8013
 
 
 [14]
 The fact that after several lots had been sold, debtors gave a note for interest accrued on the mortgages is evidence on the issue of allocation. The amount of interest then due, agreed on by the parties, would permit computation of the principal owing at that time on the mortgages and would bear on the question of whether the mortgages had been extinguished or reduced