[No. 14077-2-II. Division Two. July 23, 1992.]

OAKES LOGGING, INC., *Appellant,* v. GREEN CROW, INC., *Respondent.*

*Curtis Johnson* and *Johnson & Williams,* for appellant.

*Gary R. Colley* and *Platt, Irwin, Colley, Oliver & Wood,* for respondent.

PEARSON, J.[*] — Oakes Logging, Inc., appeals a summary judgment of dismissal in favor of Green Crow, Inc., in an action brought by Oakes to foreclose a logger's lien. We hold that Green Crow was not entitled to summary judgment as a matter of law, and reverse.

This action arose as the result of a contract between Green Crow and Belgard Logging for the cutting of timber

---

[*]The Honorable Vernon R. Pearson is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

on property owned by Green Crow in Clallam County. Belgard Logging, in turn, entered into an oral agreement with Oakes Logging to do the actual tree cutting. Belgard promised to pay Oakes $95 per hour for tree cutting and $110 per hour for related Caterpillar tractor work at the site. Their agreement was that Oakes would send periodic bills for work in progress and Belgard would pay each bill within 2 weeks of receipt. Belgard also agreed to erect a fuel tank on the site and arrange regular deliveries of diesel fuel for Oakes's machinery.

Oakes started logging on December 23, 1988. By the end of January 1989, after two billings had gone unpaid and the fuel deliveries had ceased, Kelly Oakes, the owner of Oakes Logging, became concerned about Belgard's solvency. He inquired within the logging community and learned that Belgard had been put on a cash basis by a machinery supplier. He did receive a check from Belgard on February 7 for $3,800, the amount of his first billing sent a month earlier, but Belgard had insufficient funds to cover the check, and it bounced. Nevertheless, after Kelly Oakes voiced his concerns to a supervisor at Green Crow and received assurances about payment, Oakes remained on the job.

Sometime in February, however, when Belgard's unpaid bills had mounted to the total of $12,967.50 (plus the $3,800 bill for which the NSF check had been issued), Oakes decided to take action to secure the debt. On February 28, 1989, Oakes filed a logger's lien in that amount pursuant to RCW 60.24.020, which permits a lien against cut logs (and other timber products) by the person who performed the labor. Meanwhile, Oakes continued on the job after Kelly Oakes allegedly received further assurances from Green Crow that it would make good on the bills sent to Belgard.

Oakes finished cutting the timber at the end of March 1989. The total of the bills submitted to Belgard was $38,272.50 — none of which Belgard ever paid. Oakes did not file any more log liens. However, following Oakes's recurrent complaints to Green Crow about Belgard's nonpayment of the bills, Green Crow began issuing joint checks

to Belgard and Oakes. Between March 31 and June 9, 1989, Green Crow issued seven such joint checks in the total amount of $21,000.[1] Neither Green Crow nor Belgard ever instructed Oakes to apply the payments in any particular manner. Typically, Dan Belgard of Belgard Logging would pick up the checks at Green Crow's office, endorse them, and deliver them to Oakes.

When Green Crow refused to make any more payments, Oakes filed a complaint to foreclose the logger's lien in the amount of $12,967.50. Green Crow responded that it was not answerable for the amount of the lien because the lien had already been satisfied by the joint payments Green Crow had made. The Superior Court granted summary judgment to Green Crow,[2] and this appeal followed.

■ The foregoing facts are essentially undisputed. In reviewing the summary judgment, therefore, our task is to decide whether the trial court correctly applied the law to those facts. *See, e.g., Swanson v. McKain*, 59 Wn. App. 303, 796 P.2d 1291 (1990), *review denied*, 116 Wn.2d 1007 (1991).

■ The principal issue in this case can be stated simply: Must the money Green Crow paid jointly to Oakes and Belgard be applied to satisfy the logger's lien, or can Oakes keep that money and enforce the lien against Green Crow as well? The general rule is that unless the creditor has specific instructions from the debtor as to how payments are to be applied, the creditor may apply payments to any part of the debt, as he sees fit. *United States Fid. & Guar. Co. v. E.I. Dupont De Nemours & Co.*, 197 Wash. 569, 579, 85 P.2d 1085 (1939); *Ellingsen v. Western Farmers Ass'n, Farm Fin. Ass'n*, 12 Wn. App. 423, 529 P.2d 1163 (1974). If neither party appropriates the payments to any particular

---

[1] Green Crow does not contend that it made any other payments to either Belgard or Oakes for the timber that was cut.

[2] In an amended complaint dated after oral argument on the summary judgment motion and filed on the same date, the trial court entered its order of dismissal. Oakes alleged additional claims against Green Crow based on theories of quantum meruit and promissory estoppel. Those claims are not part of this appeal.

part of the debt, the court will apply them "according to its own notion of the intrinsic equity and justice of the case." *Post-Intelligencer Pub'g Co. v. Harris*, 11 Wash. 500, 502, 39 P. 965 (1895). Absent appropriation by either party to any particular part of the debt, unless other equitable considerations override, the oldest accounts should be credited first. *See Yancovich v. Cavanaugh Lumber Co.*, 20 Wn. App. 347, 350, 581 P.2d 1057 (1978) (oldest debts credited first where debtor had several open accounts with creditor). The law in the federal court for the Western District of Washington is that in the absence of any proof of contrary intention concerning how partial payments are to be apportioned, the payments will be applied as the court presumes the *creditor* would have preferred, *i.e.*, in the manner providing the creditor the greatest security on the remaining account balance; thus, any unsecured debt would be credited before the secured debt. *Whitney-Fidalgo Seafoods, Inc. v. Miss Tammy*, 542 F. Supp. 1302, 1304 (W.D. Wash. 1982).

■ We bear in mind the purpose of the logger's lien statute. It is remedial in nature and intended to protect the person who performs labor in the harvesting of timber, and should be liberally construed to that end. *In re Little Elk Logging Co.*, 218 F. 142 (W.D. Wash. 1914). *See Kish Equip., Ltd. v. Xusa Forest Prods., Inc.*, 44 Wn. App. 785, 723 P.2d 498 (1986).

Green Crow convinced the trial court to follow an exception to the general rule that, absent instructions to the contrary, the creditor may apply the debtor's payments to any part of the debt between them. The exception is the "particular source rule": When the creditor knows that the money received for payment of a debt was derived from a particular source, the creditor may not, in the absence of the debtor's consent, apply the proceeds to a debt unrelated to the source from which such proceeds were generated. *Ellingsen v. Western Farmers Ass'n, Farm Fin. Ass'n, supra* at 427. We believe that the trial court's reliance on this exception was misplaced.

█ The particular source exception requires that the debts at issue be separate in nature, derived from separate sources and not subject to payment from a single fund. *Ellingsen,* 12 Wn. App. at 428. That is not what happened here. It is important to keep in mind the relationship of the parties in this case. Oakes is the creditor, Belgard is his debtor pursuant to their agreement, and Green Crow became Oakes's debtor only by virtue of the logger's lien against the timber cut on Green Crow's lands. Green Crow did not have any contractual obligation to Oakes. The money that Green Crow paid jointly to Belgard and Oakes was to cover Green Crow's obligation to Belgard. When Belgard signed over the checks to Oakes, Belgard was, in turn, satisfying its obligation to Oakes. Obviously, the source of *all* of the funds was Green Crow. So whether Oakes applied the payments to his unsecured debt with Belgard or to that part of the debt that was secured by the logger's lien, all of the debt was related to the same source — Green Crow, as the owner of the timber. Thus, the particular source rule does not relieve Green Crow of the logger's lien.[3]

█ Green Crow argues that Oakes's billing records show the application of the joint payments to the oldest debt first, which in this case happens to be the debt secured by the logger's lien, and that Oakes is bound by its own election to allocate the payments in that fashion. The problem with this theory is that the record does not support it. Both Kelly Oakes and his bookkeeper, Becky Fowles, submitted affidavits stating that they applied the payments from Green Crow to the most recent debt first, the portion unsecured by the logger's lien. Green Crow's contention that the billing records reflect a contrary application is simply wrong.

---

[3] In the trial court, Green Crow also argued other defenses to foreclosure of the logger's lien. They involve third party sureties and the sale of secured property. We need not describe those theories in detail, as the trial court did not rely on them to preclude foreclosure. We leave it to the trial court to determine if our reasons for disapproving the particular source rule apply with equal force to those other theories, which Green Crow concedes are "similar" limits on the creditor's ability to allocate payments.

This is a case in which the creditor did apply the payments against a particular part of the debt, so the court need not intervene in equity to allocate the payments.

Reversed and remanded to Superior Court for further proceedings consistent with this opinion. Oakes requested attorney's fees on appeal in the event of a reversal. *See* RCW 60.24.180; *Lee v. Willman*, 131 Wash. 279, 230 P. 148 (1924). We leave it to the trial court to address the question of attorney's fees at the conclusion of proceedings on remand.

PETRICH, C.J., and WIELAND, J. Pro Tem., concur.