IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DEBORAH MCCALLUM, an individual, | ) | No. 71137-7-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| GOLF ESCROW CORPORATION, a | ) | |
| Washington corporation; STERLING | ) | |
| FINANCIAL CORPORATION, a | ) | |
| Washington corporation; TRUSTEE | ) | |
| SERVICES, INC., a Washington | ) | UNPUBLISHED OPINION |
| corporation; PAMELA J. LANE, an | ) | |
| individual; | ) | FILED: December 15, 2014 |
| | ) | |
| Respondents, | ) | |
| | ) | |
| PHILIP D. HINGSTON and DEBBIE | ) | |
| HINGSTON, husband and wife, | ) | |
| HYPERION CAPITAL GROUP, LLC, an | ) | |
| Oregon limited liability company; BANK | ) | |
| OF AMERICA, N.A.; and MORTGAGE | ) | |
| ELECTRONIC REGISTRATION | ) | |
| SYSTEMS, INC., a Delaware | ) | |
| corporation; and FEDERAL HOME | ) | |
| LOAN MORTGAGE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

BECKER, J. — This appeal involves an unsecured creditor's attempt to impose liability upon third parties for the balance owing when her debtor defaulted. The debtor paid off part of the debt by making the creditor the

beneficiary of a deed of trust without her knowledge. We affirm the summary judgment dismissal of her claims against the entities that handled that deed of trust transaction.

This court reviews an order granting summary judgment de novo, performing the same inquiry as the trial court. Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 698, 952 P.2d 590 (1998). Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate that there is no genuine issue of material fact. CR 56(c). All facts and reasonable inferences are considered in a light most favorable to the nonmoving party, and all questions of law are reviewed de novo. Wilson Court Ltd., 134 Wn.2d at 698.

The record reflects that the appellant, Deborah McCallum, is an experienced real estate agent who specialized in locating and marketing properties for residential development in Edmonds. Her neighbor and friend, Craig Reimer, worked as a contractor and developer in the Edmonds area. In 2004, McCallum began to loan money to Reimer to be used in his real estate business, Eaglewood Homes, Inc. Per the terms of their oral agreement, (1) the loan was due on demand, (2) Reimer would give a deed of trust against one of his properties whenever McCallum requested it, (3) the deed would secure the entire loan balance, and (4) interest would accrue at 1.75 percent over prime per year. Between 2004 and 2008, McCallum loaned Reimer a total of $800,000. Reimer periodically made payments of both principal and interest. In spring

2008, the balance owing was $550,000. McCallum asked Reimer to pay off the loan.

In July 2008, Reimer refinanced an existing construction loan from Sterling Savings Bank, a wholly owned subsidiary of respondent Sterling Financial Corporation, and obtained $890,000.[1] Reimer intended to use part of these proceeds to pay off part of the balance of his debt to McCallum. For reasons undisclosed in the record, the bank required Reimer to execute a deed of trust naming McCallum as a beneficiary. Reimer did so, and the deed of trust was recorded against a Reimer property located at 915 Cedar Street in Edmonds. The deed of trust designated McCallum as beneficiary and stated that it secured payment of $320,000. Respondent Trustee Services Inc. was the named trustee. Later that month, the bank placed the $890,000 in loan proceeds in escrow with respondent Golf Escrow Corporation. At the bank's request, Golf Escrow issued a check for $320,000 to McCallum to satisfy the deed of trust in full.

Reimer gave McCallum the check for $320,000 on July 31, 2008, without informing her that it was in satisfaction of a deed of trust. McCallum demanded that Reimer pay the remaining $230,000. Reimer assured her that he would pay it eventually. McCallum cashed the check the next day. The check was drawn on an account belonging to Golf Escrow, and it listed an escrow number. Nevertheless, McCallum remained unaware that she had been, however briefly, a beneficiary of a deed of trust.

---

[1] See Clerk's Papers at 205-06 (Debbie Hingston's declaration).

3

On August 12, 2008, Golf Escrow, through its principal Pamela Lane, asked Trustee Services to record a reconveyance of the deed of trust. On September 30, 2008, Trustee Services asked Golf Escrow for a written request for reconveyance signed by the beneficiary, McCallum. Golf Escrow forwarded this request to Reimer. On October 28, 2008, Trustee Services received a request for reconveyance form purportedly signed by McCallum. On October 31, 2008, Trustee Services recorded a full reconveyance. According to McCallum, her signature on this document was forged and she was never asked to sign a request for reconveyance.

In December 2008, McCallum asked Reimer to sign a promissory note and deeds of trust that her lawyers had drafted to secure the balance of $230,000. Reimer refused to sign, but he again assured McCallum that he would continue making payments.

In fall 2009, Reimer asked McCallum to take a reduction of her loan. She refused. In December 2009, Reimer stopped making payments. During this time, the property at 915 Cedar Street was listed for sale at $890,000—the amount the bank had loaned Reimer. In January 2010, Debbie and Philip Hingston offered to buy it for $845,000. With the bank's approval of the short sale, Reimer accepted the offer and the sale closed in May 2010.

On May 10, 2010, McCallum filed suit against Reimer and Eaglewood. During discovery, McCallum learned for the first time about the deed of trust Reimer had executed for her benefit in July 2008.

McCallum obtained a judgment for the $230,000 balance plus interest, but she was unable to collect it. Reimer and his wife received a discharge in bankruptcy in August 2011.

On October 29, 2012, McCallum filed the present lawsuit. All defendants obtained dismissal on summary judgment, and McCallum filed this appeal. After a stipulated dismissal of several other respondents, the remaining respondents are Trustee Services, Golf Escrow, Pamela Lane, and Sterling Financial. McCallum asserts that these respondents breached fiduciary, statutory, and contractual duties by failing to contact her directly to verify the terms of her loan to Reimer and failing to obtain from her a valid, unforged request for reconveyance.

For purposes of summary judgment, we will assume that the respondents did breach various duties in the manner alleged. Proximate causation and damages are elements of McCallum's claims of negligence, breach of fiduciary duty, and consumer protection violations. Below, the respondents' motions for summary judgment argued that McCallum suffered no damages because she was paid in full for the amount secured. Thus, the issue on appeal is whether their actions damaged McCallum.

In opposition to summary judgment, McCallum argued that the deed of trust was given to secure the total debt of $550,000—an argument she does not make on appeal. She also made what we will refer to as the "allocation" argument—that even if the deed of trust was given to secure only $320,000, the check she received in that amount was or should have been allocated to the

unsecured portion of the total debt, leaving the deed of trust to secure the remaining $230,000. She asserted that if she had known there was a deed of trust securing the remaining $230,000, she could have simply foreclosed on it before it was reconveyed.

On appeal, McCallum repeats the allocation argument, but she initially makes a new argument that we shall refer to as the "lost opportunity" argument. She alleges that she lost the opportunity to protect herself against Reimer's eventual default because the respondents did not make her aware of the deed of trust. She contends that if she had known about the deed of trust transaction, she would have immediately demanded and obtained full security from Reimer for the remaining loan balance:

> Further, presented with Reimer's dishonesty, McCallum would not have relied on his promise to pay the remaining balance, but would have immediately demanded that Reimer execute a Deed of Trust securing the remaining loan balance as required by their agreement. (CP 119-20). McCallum could have also availed herself of other remedies, including immediately filing suit against Reimer and filing lis pendens against the development properties that Reimer had agreed would serve as security for McCallum's loan upon her demand.

Brief of Appellant at 19.

Generally, failure to raise an issue before the trial court precludes a party from raising it on appeal. RAP 2.5. McCallum acknowledges this rule but asserts that, at a minimum, her "lost opportunity" argument on appeal is so closely related to the "allocation" argument she raised below that it deserves to be addressed on the merits. Reply Br. of Appellant at 8 n.5, citing Lunsford v. Saberhagen Holdings, Inc., 139 Wn. App. 334, 338, 160 P.3d 1089 (2007) (an

appellate court may exercise its discretion to consider new arguments that are "arguably related" to arguments made below), aff'd, 166 Wn.2d 264, 208 P.3d 1092 (2009).

The allocation argument asks the court to presume that McCallum was secured for the balance of $230,000 until the respondents wrongfully eliminated her security. The lost opportunity argument does not presume that McCallum ever had security for the balance of $230,000; rather, it presumes that she could have forced Reimer to give her security for the balance of $230,000 at the time of the deed of trust transaction if she had known about it. Respondents might have developed the record differently if McCallum had made the lost opportunity argument below. The two arguments are not so closely related that respondents should have seen it coming. We decline to consider the lost opportunity argument for the first time on appeal. RAP 2.5.

We now address the allocation argument. This is the claim that Reimer's partial payment of $320,000 was or should have been allocated to the unsecured portion of his debt. McCallum draws her argument from a general rule that applies when a creditor is owed two different debts by the same debtor. If the creditor receives a payment without direction as to how it should be applied, the creditor may apply the payment to either debt. Ellingsen v. W. Farmers Ass'n, 12 Wn. App. 423, 426, 529 P.2d 1163 (1974). A creditor who is secured as to one debt but not the other will normally apply the payment to the unsecured debt first in order to retain maximum security.

7

McCallum declares, "When I received the check, I understood the $320,000 was simply a payment against the aggregate debt owed. In fact, I necessarily associated the funds only with unsecured debt because I did not yet know any portion had been secured." According to McCallum, after she discovered the documents reflecting there had been a deed of trust, on advice of counsel she "more specifically applied the check first to any loan balance which might be deemed unsecured." She concludes that had the respondents not wrongfully reconveyed the deed of trust, she would have remained secured with a first position deed of trust for the balance of $230,000. "The damages flowing from respondents' wrongful release of McCallum's security interest are thus easily calculable as the remaining amount of Reimer's loan that was still secured by the Deed of Trust—$230,000." Br. of Appellant at 22.

The respondents invoke an exception to the general rule known as the "particular source" rule. When money received for payment of a debt is known to the creditor to have been derived from a particular source, the creditor may *not* unilaterally apply the proceeds to a debt unrelated to the source from which such proceeds were generated. Ellingsen, 12 Wn. App. at 426, citing Cummings v. Erickson, 116 Wash. 347, 199 P. 736 (1921). The respondents argue that Reimer's payment of $320,000 necessarily had to be applied to exonerate the deed of trust because the deed of trust was the source of that payment. They conclude that the balance of $230,000 remained unsecured, and therefore the reconveyance of the deed of trust did not damage McCallum.

8

The general rule is typically applied in circumstances where there are two distinct debts, and the creditor knows one is secured and the other is unsecured. See, e.g., Ellingsen, 12 Wn. App. at 425-26. That is not what happened here. McCallum did not request security for the loan and did not expect to be the beneficiary of a deed of trust. When she received the payment of $320,000, she did not know it was given to satisfy a deed of trust. She thought the total debt was unsecured.

The particular source exception to the general rule is applied when the money with which the payment is made is *known to the creditor* to have been derived from a particular source or fund. Cummings, 116 Wash. at 351. That is not what happened here, either. At the time McCallum received the payment of $320,000, she did not know it was in satisfaction of the deed of trust.

Because McCallum did not know there was a deed of trust, she did not allocate the payment of $320,000 at the time she received it. And Reimer did not give her any direction as to how it should be allocated. Where neither the creditor nor the debtor directs application of the payment to any particular debt, the court will apply the payment according to its own notion of the intrinsic equity and justice of the case. Oakes Logging, Inc. v. Green Crow, Inc., 66 Wn. App. 598, 602, 832 P.2d 894 (1992). McCallum cites Oakes Logging and argues that equity calls for allocating the $320,000 in a manner that provides her, as the creditor, with the greatest security on the remaining balance.

The Restatement of Contracts, an authority not cited by the parties, also supports resort to equity when no allocation has been made, but it states that

9

consideration must also be given to the interests of third parties. "If neither the debtor nor the creditor has exercised his power with respect to the application of a payment as between two or more matured debts, the payment is applied to debts to which the creditor could have applied it *with just regard to the interests of third persons, the debtor and the creditor.*" RESTATEMENT (SECOND) OF CONTRACTS § 260 (1981) (emphasis added).

In this atypical case, equity does not favor McCallum's interest over third party interests. McCallum loaned money to Reimer without obtaining security. At the time Reimer made her a beneficiary of a deed of trust, she was at risk of losing the total debt of $550,000. As a result of becoming the beneficiary of a deed of trust securing $320,000, her risk of loss was reduced to $230,000. McCallum is in no worse position than if she had never been a beneficiary of the deed of trust. In fact, it appears her position was improved by the deed of trust transaction even though she was not informed of it. It would be inequitable to shift the risk of loss from McCallum to the entities that facilitated the deed of trust transaction.

We conclude these are not appropriate circumstances for an equitable allocation of the $320,000 payment to unsecured debt. Even assuming that the respondents wrongfully failed to contact McCallum before releasing the security, she was unsecured as to the balance of $230,000 and therefore she cannot show that she was damaged by their conduct.

The orders granting summary judgment are affirmed.

No. 71137-7-I/11

Becker, J.

WE CONCUR:

Spearman, C.J.                    Appelwick, J.

11