[No. 9476.   Department Two.   August 4, 1911.]

Gust Forsberg et al., Appellants, v. Albert Lundgren et al., Respondents.[1]

Logs and Logging—Liens—Railroad Ties—Right of Lien—Statutes. Under Rem. & Bal. Code, § 1163, giving a lien for work in manufacturing saw logs and other timber into lumber, "while it remains at the mill where it was manufactured," and defining lumber to include all timber sawed or split, including every article manufactured from saw logs or other timber, there can be no lien on railroad ties manufactured elsewhere than at a mill, nor after the removal of ties from the mill where manufactured.

Same. Rem. & Bal. Code, § 1162, giving a lien for labor in obtaining or securing saw logs, spars, piles, cordwood, shingle bolts, or other timber, includes railroad ties, under the rule of ejusdem generis.

Same — Action to Foreclose — Findings — Removal. A finding that railroad ties were cut and manufactured in the woods precludes any inference that they were manufactured at a mill, within the meaning of Rem. & Bal. Code, § 1163, limiting liens on such ties to the time which they remain at the mill.

Same—Enforcement of Lien—Proceeds of Sale. On the removal from the state of railroad ties manufactured elsewhere than at a mill, a logger's lien thereon should be enforced out of the proceeds of the sale thereof, garnished and paid into the registry of the court.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered February 17, 1911, in favor of the defendants, after a trial on the merits before the court without a jury, in an action to foreclose a logger's lien. Reversed.

*Million, Houser & Shrauger*, for appellants.
*Coleman & Gable*, for respondents.

Ellis, J.—The appellants were laborers employed by the respondents Lundgren and Hedstrom in cutting and manufacturing railroad ties in the woods near the line of the Great

[1]Reported in 117 Pac. 244.

Northern Railway, in Skagit county, Washington. They began the work sometime in August, 1909, and ceased on June 16, 1910. The ties as completed were from time to time delivered upon the right of way of the railway company and were sold to respondent Pacific Fir Company, which company turned them over to the railway company. Usually an inspector of the railway company inspected the ties on the right of way, from the first to the tenth of each month, and they were usually removed during that month by the railway company. Such an inspection was made on June 4, 1910. There were then upon the right of way 1,731 inspected and accepted ties. Before June 16, the railway company removed these ties outside of the state. By June 16, when the appellants quit work, there had again accumulated 700 ties upon the right of way. These still remained there when, on June 30, appellants filed their notice claiming a lien upon these 700 ties and also upon the 1,731 ties which had been removed. On April 25, 1910, respondent Pearson took from Lundgren and Hedstrom an assignment, addressed to Pacific Fir Company as follows: "Until further notice, please pay to the order of Mr. Gus Peterson, of Seattle, all moneys that may become due us hereafter for ties inspected and accepted for our account." On the same day, this order or assignment was served upon the Pacific Fir Company.

On June 9, 1910, respondent Grassmere Shingle Company began an action against Lundgren, Hedstrom and Pearson or Peterson, and garnished the Pacific Fir Company. That company answered in the present action, admitting the purchase of the ties from Lundgren and Hedstrom for $467.37, which sum it tendered into court in this case, and was, by consent of all concerned, discharged from further liability on account of the garnishment. The trial court sustained the appellants' lien upon the 700 ties remaining upon the railroad right of way, but denied a lien upon the 1,731 ties which had been removed or upon the proceeds thereof then in the registry of the court, whereupon this appeal was taken.

The sole question for our consideration is whether, under these admitted facts, the appellants are entitled to a lien upon the 1,731 ties or the proceeds thereof. The right of lien, if it exists at all, must be found either in § 1162 or § 1163 of Rem. & Bal. Code. Section 1163 is as follows:

"Every person performing work or labor or assisting in manufacturing saw logs and other timber into lumber and shingles, has a lien upon such lumber while the same remains at *the mill where it was manufactured,* or in the possession or under the control of the manufacturer, whether such work or labor was done at the instance of the owner of such logs or his agent or any contractor or subcontractor of such owner. The term lumber, as used in this chapter, shall be held and be construed to mean all logs or other timber sawed or split for use, including beams, joists, planks, boards, shingles, laths, staves, hoops, and every article of whatsoever nature or description manufactured from saw logs or other timber."

This section cannot apply to any of the ties here in question for two reasons: first, because it only contemplates a lien on things manufactured at a mill; and second, because it only accords the lien while the things remain at the mill where they were manufactured, or in the possession or under the control of the manufacturer. While the term "lumber" is defined in the last sentence of this section, still the definition there given, when applied to the word lumber as used in this section, can only include articles manufactured from saw logs or other timber when manufactured at a mill. The definition is broad enough to include railroad ties, but the context excludes ties manufactured elsewhere than at a mill from the operation of the lien. It follows that if a lien can be maintained on any of these ties it must be under Rem. & Bal. Code, § 1162, the pertinent part of which is as follows:

"Every person performing labor upon, or who shall assist in obtaining or securing saw logs, spars, piles, cordwood, shingle bolts, or other timber, . . . shall have a lien upon the same for work or labor done upon, or in obtaining or securing, . . . the particular saw logs, spars, cordwood,

shingle bolts, or other timber in said claim of lien described,"
etc.

The words "cordwood" and "shingle bolts" were inserted
in this section by chapter 88, p. 175, § 1, Laws of 1895, and
the amendment of 1907, chapter 9, p. 14, § 1, Laws of 1907,
broadened the application of the original section as to the
persons benefited.

In *Ryan v. Guilfoil,* 13 Wash. 373, 43 Pac. 351, which
respondents claim is decisive of this case, this court held that
the words "other timber" as used in the original section,
Rem. & Bal. Code, § 1162 (Laws 1893, p. 428, § 1), did not
include fence posts, because the other things there specifically
enumerated, namely, saw logs, spars, and piles were things of
which the manufacture is not yet completed, while fence posts
are something the manufacture of which is complete.   The
court was of the opinion that "other timber" as there used
could only apply to things of the same unfinished nature as
the things enumerated, and that fence posts, whether sawed
or split, would thus come under the definition of lumber as
defined in the second section of the act of 1893.   The
amendment of 1895, inserting the words "cordwood" and
"shingle bolts," was either not in force when the lien in
that case was initiated or was not called to the attention
of the court, since the decision refers to and quotes the
original section as before the amendment.   Since the
amendment of 1895, adding the words cordwood and shingle
bolts, the reason for the decision in *Ryan v. Guilfoil* no
longer applies.   Cordwood is obviously a completed article,
and a shingle bolt had, prior to the amendment, been
repeatedly classified as "a manufactured article" by this
court, and therefore held to come within the definition of
"lumber" found in § 1163.   *Hadlock v. Shumway,* 11 Wash.
690, 40 Pac. 346; *Campbell v. Sterling Mfg. Co.,* 11 Wash.
204, 39 Pac. 451.

The legislature, by the amendment of 1895, having ex-

pressly made both of these manufactured articles subject to
the lien provided in § 1162 without further limiting the words
"other timber," it is plain that the reasoning employed in
*Ryan v. Giulfoil* would no longer exclude either fence posts
or railroad ties from the operation of § 1162 unless they were
manufactured in. a mill. Applying the rule *ejusdem generis*,
on which that decision rests, to the amended statute, we find
that manufactured articles can no longer be excluded, and
since both fence posts and railroad ties when manufactured
elsewhere than in a mill are things *ejusdem generis* with cord-
wood and shingle bolts, they are now included in the general
words "or other timber." The supreme court of Wisconsin
has held that the word "timber," when used in a statute giv-
ing a lien on "logs and timber" for labor performed thereon,
is sufficiently broad to include railroad ties. *Kollock v.
Parcher*, 52 Wis. 393, 9 N. W. 67.

Moreover, it is now plain that the legislature intended to
accord a lien to all persons who have performed labor in
manufacturing articles from timber whether in a mill or else-
where. Since § 1163 gave the lien only on articles manu-
factured at a mill, there would be no lien at all on completely
manufactured articles made elsewhere unless given by § 1162.
It was doubtless amended to meet just such a situation as
that here presented.

Counsel for respondent objects that the record does not
disclose how the ties were manufactured, and that they may
have been sawed by a portable sawmill or split by a maul
and wedge. We find no merit in this contention. The court
found that the ties were cut and manufactured in the woods,
which precludes any inference that they were manufactured
at a mill within the meaning of § 1163.

The trial court was correct in allowing the lien upon the
700 ties remaining on the right of way, but erred in refusing
the lien upon the 1,731 ties which had been removed, or on
the proceeds of the sale thereof. The cause is remanded with

direction to modify the judgment in accordance with this opinion.

Dunbar, C. J., Chadwick, Morris, and Crow, JJ., concur.