[No. 15163-1-I. Division One. August 6, 1986.]

KISH EQUIPMENT, LTD., *Appellant*, v. XUSA FOREST PRODUCTS, INC., ET AL, *Respondents*.

*Robert B. Sherwood* and *Sherwood, Bentley & Anderson*, for appellant.

*Philip H. Brandt* and *Simonarson, Visser, Zender, Brandt & Thurston; Edward O'Connor* and *McCush, Kingsbury, O'Connor, Ludwigson, Thompson & Hayes; Gregory Kosanke* and *Smith & Rosellini; Bruce T. Bjerke, Kyle R. Samuels,* and *Riddell, Williams, Bullitt & Walkinshaw*, for respondents.

RINGOLD, A.C.J.—Kish Equipment, Ltd. appeals from a summary judgment dismissing its claim of a logger's lien under RCW 60.24.020. Finding that Kish's activities are not encompassed by the statute, we affirm.

On or about October 1, 1983, Xusa Forest Products, Inc., a British Columbia corporation, entered into a sales agreement with Georgia Pacific, a corporation doing business in Bellingham, Washington. The agreement provided that Georgia Pacific would purchase wood chips from Xusa. At

about the same time, Xusa entered into an agreement with Daishowa America Co., Inc., in which Daishowa agreed to finance Xusa's purchase of logs for working capital purposes. A financing statement to this effect was filed on October 24, 1983.

Logs harvested in British Columbia were cut into chips by Xusa at its plant near Chilliwack, British Columbia. From May 1 through December 12, 1983, Kish hauled the wood chips at Xusa's request from Sardis, British Columbia to the Georgia Pacific plant in Bellingham, Washington. The chips were used by Georgia Pacific in the making of paper products.

Xusa subsequently became insolvent owing Kish $205,771.28 in Canadian funds. Xusa also owed Daishowa over $240,000. Kish commenced this action in February 1984, seeking to enforce a logger's lien pursuant to RCW 60.24.020. Daishowa responded that Kish did not have a valid lien and that Daishowa had a perfected security interest in all the funds held by Georgia Pacific for Xusa's account pursuant to the sales agreement and assignment of October 1, 1983. The trial court determined that Kish did not have a valid lien and granted summary judgment in favor of Daishowa. Kish appeals.

### APPLICABILITY OF THE LOGGER'S LIEN

Washington statutes afford three different types of liens on timber and lumber: (1) a stumpage lien (RCW 60.24-.035), (2) a lumberman's (or laborer's) lien (RCW 60.24-.030), and (3) a logger's lien (RCW 60.24.020). The body of these statutes became law in 1877 and have remained virtually the same throughout the years with only minor modifications. *Adams v. Harvey,* 129 Wash. 483, 489, 225 P. 407, *aff'd on rehearing,* 131 Wash. 701, 230 P. 436 (1924).

The logger's lien statute provides:

Every person performing labor upon or who shall assist in obtaining or securing saw logs, spars, piles, cord wood, shingle bolts or other timber, and the owner or owners of any tugboat or towboat, which shall tow or assist in towing, from one place to another within this state, any saw

logs, spars, piles, cord wood, shingle bolts or other timber, and the owner or owners of any team or any logging engine, which shall haul or assist in hauling from one place to another within this state, any saw logs, spars, piles, cord wood, shingle bolts or other timber, and the owner or owners of any logging or other railroad over which saw logs, spars, piles, cord wood, shingle bolts, or other timber shall be transported and delivered, shall have a lien upon the same for the work or labor done upon, or in obtaining or securing, or for services rendered in towing, transporting, hauling, or driving, the particular saw logs, spars, cord wood, shingle bolts, or other timber in said claim of lien described whether such work, labor or services was done, rendered or performed at the instance of the owner of the same or his agent. Scalers, and bull cooks, and cooks, flunkeys and waiters in lumber camps, shall be regarded as persons who assist in obtaining or securing the timber herein mentioned.

RCW 60.24.020.

In contrast, the lumberman's lien statute provides:

Every person performing work or labor or assisting in manufacturing saw logs and other timber into lumber and shingles, has a lien upon such lumber while the same remains at the mill where it was manufactured, or in the possession or under the control of the manufacturer, whether such work or labor was done at the instance of the owner of such logs or his agent or any contractor or subcontractor of such owner. The term lumber, as used in this chapter, shall be held and be construed to mean all logs or other timber sawed or split for use, including beams, joists, planks, boards, shingles, laths, staves, hoops, and every article of whatsoever nature or description manufactured from saw logs or other timber.

RCW 60.24.030.

As stated in *Adams v. Harvey, supra,* it appears to be

the legislative intent that the logger should have a lien on the thing which he created, and the manufacturer [lumberman] should have a lien on the thing he created, and that these two liens should be distinguished one from the other and kept entirely separate.

*Adams,* at 489; *see also Winsor v. Johnson,* 5 Wash. 429, 430, 32 P. 215 (1892) (the court recognized the lumberman's

and logger's liens as representing two distinct classes).

It is observed that while the logger's lien statute, RCW 60.24.020, provides protection for those hauling timber after the trees have been harvested, the lumberman's lien, RCW 60.24.030, does not. Kish contends that the wood chips hauled were "timber". Kish maintains, therefore, that it has a valid lien claim for transporting the wood chips under the logger's lien statute. RCW 60.24.020. Daishowa argues that the wood chips are a manufactured product constituting "lumber" under the lumberman's lien statute. RCW 60.24.030.

Kish concedes that its claim can only be asserted under the logger's lien statute. If the wood chips are lumber within the scope of the lumberman's lien statute, Kish acknowledges that its claim must fail. Thus, the first question this court must decide is whether wood chips are lumber or timber.[1]

The logger's and lumberman's lien statutes were last amended in 1923 and 1893 respectively. At the time these statutes and subsequent amendments were passed, wood chips were commercially unknown and the residue from sawed logs was considered waste material. *International Paper Co. v. Rabren*, 285 Ala. 383, 232 So. 2d 627, 629 (1970). Accordingly, we must decide whether the legislators

---

[1]It should be noted that neither party has briefed the question of whether Kish can assert a claim under the logger's lien statute since hauling logs by truck is not specifically mentioned in the statute. Nonetheless, research has indicated that Kish should be able to assert such a claim. Our courts have long held that the logger's and lumberman's lien statutes are remedial in nature and should be liberally construed to effectuate their purposes. *DeLong v. High Carbon Coal Co.*, 155 Wash. 265, 270–71, 283 P. 1079 (1930); *Proulx v. Stetson & Post Mill Co.*, 6 Wash. 478, 481, 33 P. 1067 (1893). In *O'Brien v. Perfection Pile Preserving Co.*, 49 Wash. 395, 397, 95 P. 489 (1908), the court held that the logger's lien then in effect (Ball. Code § 5930) provided a lien in favor of every person who hauled logs and piles before being worked into a finished product and was not restricted to those hauled only by tugboats, towboats, logging and other railroads as provided by the statute. Similarly, in *Greely v. Bank of Stevenson*, 169 Wash. 181, 188, 13 P.2d 493 (1932), the court upheld a logger's lien claimed upon logs hauled by truck. The court did not even question whether that type of hauling was within the scope of the statute.

who drafted and amended the statutes would have considered wood chips to be lumber or timber, if wood chips had been a commodity known to them. A historical overview of the early judicial interpretations and subsequent statutory changes is helpful.

In *Dexter Horton & Co. v. Sparkman*, 2 Wash. 165, 25 P. 1070 (1891), the court considered whether the plaintiffs could assert a lumberman's lien on the shingles they assisted in manufacturing. The court held that the lumberman's lien in effect at that time (Code of 1881 § 1492) did not encompass the manufacture of shingles. The court stated that

> No lien is given by statute for the manufacture of shingles unless we hold that shingles are included in the term "lumber." We do not think the statute was intended to cover such an interpretation. It gives a lien only to those persons who labor upon or assist in "manufacturing saw—logs into lumber," which, we take it, means the grosser operation of converting logs into timber, planks and boards. There could, therefore, be no lien for such part of the plaintiff's labor as was applied to making shingles . . .

*Dexter Horton*, at 169.

In 1893, the Legislature amended the lumberman's lien statute to explicitly include manufactured shingles within its scope. Laws of 1893, ch. 132, § 2, p. 428. Since the Legislature is presumed to know the law, *Woodson v. State*, 95 Wn.2d 257, 262, 623 P.2d 683 (1980), this court may assume that the change in the statute was prompted by the decision in *Dexter Horton*.

The logger's lien statute has been amended in a similar fashion. In *Campbell v. Sterling Mfg. Co.*, 11 Wash. 204, 206, 39 P. 451 (1895), the court held that persons engaged in the cutting of shingle bolts could claim a lumberman's lien. Neither the logger's nor the lumberman's lien statutes in effect at the time made explicit provision for shingle bolts. After the ruling in *Campbell*, the Legislature amended the logger's lien statute adding "cord wood" and "shingle bolts" to the list of items in which a logger could

assert a logger's lien. Laws of 1895, ch. 88, § 1, p. 175. Presumably, the Legislature intended that the logger's lien rather than the lumberman's lien cover shingle bolts.

In *Hadlock v. Shumway,* 11 Wash. 690, 40 P. 346 (1895), the court once again held that a lien upon shingle bolts was authorized by the lumberman's lien. The court made no mention of the recent amendment to the logger's lien or to *Campbell v. Sterling Mfg. Co., supra.*

Similarly, in *Ryan v. Guilfoil,* 13 Wash. 373, 43 P. 351 (1896), the court made no mention of the 1895 amendment to the logger's lien when deciding whether fence posts were "other timber" under the logger's lien or "lumber" under the lumberman's lien. Basing its analysis solely on the language of the statutes as they existed in 1893, the court held that the fence posts constituted lumber because they were completely manufactured even though they were not manufactured at a mill, but rather split on site. *Ryan,* at 376–77. The court concluded that since the fence posts were "lumber" they were within the scope of the lumberman's lien.

The fallacy of the rationale applied in *Ryan* was later demonstrated in *Forsberg v. Lundgren,* 64 Wash. 427, 117 P. 244 (1911). The court was faced with the question of whether a lumberman's lien could be claimed by the plaintiff laborers upon railroad ties. The defendants argued that under *Ryan v. Guilfoil, supra,* the fence posts were lumber despite the fact that they were manufactured in the woods and not in a mill. The *Forsberg* court noted that in *Ryan v. Guilfoil, supra*

> this court held that the words "other timber" as used in the original section, (Laws 1893, p. 428, § 1), did not include fence posts, because the other things there specifically enumerated, namely, saw logs, spars, and piles were things of which the manufacture is not yet completed, while fence posts are something the manufacture of which is complete. The court was of the opinion that "other timber" as there used could only apply to things of the same unfinished nature as the things enumerated, and that fence posts, whether sawed or split, would thus

come under the definition of lumber as defined in the second section of the act of 1893. The amendment of 1895, inserting the words "cordwood" and "shingle bolts," was either not in force when the lien in that case was initiated or was not called to the attention of the court, since the decision refers to and quotes the original section as before the amendment. Since the amendment of 1895, adding the words cordwood and shingle bolts, the reason for the decision in *Ryan v. Guilfoil* no longer applies. Cordwood is obviously a completed article, and a shingle bolt had, prior to the amendment, been repeatedly classified as "a manufactured article" by this court, and therefore held to come within the definition of "lumber" found in § 1163 [lumberman's lien].

The legislature, by the amendment of 1895, having expressly made both of these manufactured articles subject to the lien provided in § 1162 [logger's lien] without further limiting the words "other timber," it is plain that the reasoning employed in *Ryan v. Giulfoil [sic]* would no longer exclude either fence posts or railroad ties from the operation of § 1162 unless they were manufactured in a mill. Applying the rule *ejusdem generis,* on which that decision rests, to the amended statute, we find that manufactured articles can no longer be excluded, and since both fence posts and railroad ties when manufactured elsewhere than in a mill are things *ejusdem generis* with cordwood and shingle bolts, they are now included in the general words "or other timber.". . .

Moreover, it is now plain that the legislature intended to accord a lien to all persons who have performed labor in manufacturing articles from timber whether in a mill or elsewhere. Since § 1163 gave the lien only on articles manufactured at a mill, there would be no lien at all on completely manufactured articles made elsewhere unless given by § 1162. It was doubtless amended to meet just such a situation as that here presented.

. . . The court found that the ties were cut and manufactured in the woods, which precludes any inference that they were manufactured at a mill within the meaning of § 1163.

(Citations omitted.) *Forsberg,* at 430–31.

Unlike some of the earlier cases mentioned, the Legislature has not expressed disapproval with this holding by

subsequent amendment of the statute. The only amendment made after *Forsberg* simply extended the protections of the logger's lien statute to certain persons who had previously not been recognized. Laws of 1923, ch. 10, § 1, p. 11–12.

Kish concedes that the wood chips in issue were processed in a mill in British Columbia. Accordingly, it would appear that under *Forsberg* the wood chips constitute "lumber" making the logger's lien statute inapplicable. Kish contends, however, that since the wood chips were destined for Bellingham for use in the manufacture of wood pulp and paper, the wood chips were not a finished product manufactured in a mill, and therefore, the lumberman's lien is inapplicable and the logger's lien must control. Kish's argument must fail.

In *Roberts v. Camas Wood Prods., Inc.*, 59 Wn.2d 126, 130, 366 P.2d 473 (1961), which Kish cites for support, the court held that in the lumberman's lien the Legislature limited the right of a lien to those workers who performed labor in producing *finished* lumber. *Roberts,* at 130. In that case, the parties stipulated that the poles upon which the lien was claimed were "finished lumber." *Roberts,* at 129. The court offers no guidance as to what constitutes "finished" lumber in the absence of a stipulation to that effect. The language used is particularly unfortunate since the lumberman's lien statute imposes no such qualification that the lumber be "finished." RCW 60.24.030. Nonetheless, a general rule applicable to the case sub judice may be gleaned from *Roberts.*

Webster defines "finished" as "brought to conclusion." *Webster's Third New International Dictionary* (1971). In *Roberts,* the court held that once "finished" lumber left its original place of manufacture destined for remanufacture into another item, the lumber is no longer within the scope of the lumberman's lien. *Roberts,* at 130. The case at bar is analogous. The wood chips manufactured at the mill in British Columbia were the finished product of that mill. Once the wood chips were manufactured there, that mill's

operation was complete. It is irrelevant that this product was destined for another mill for remanufacturing into another item, product or material.

Adoption of the position advocated by Kish would create great uncertainties. The determination of whether a product from a mill was lumber or timber would depend upon the subsequent use to which it was put. For example, in this case, Kish asserts that wood chips are not a finished product since they are to be made into paper products. If some of the wood chips were to be sold to consumers "as is", however, those wood chips would be "finished." Nothing in the aforementioned decisions requires this court to adopt a position so fraught with interpretive difficulties.

■ We conclude that in enacting RCW 60.24.020, the Legislature intended to provide protection by lien to those persons working at the site where logs are harvested and to those transporting the product from the woods. It is not the legislative intent to provide a laborer with a logger's lien on wood chips that have been manufactured in a processing mill. The logger's lien, therefore, does not extend to those transporting wood chips.

The interpretation of the statutes adopted herein is supported by application of ejusdem generis. Though the parties have failed to provide the court with information regarding the process of logging, the court in *Burruss v. Hardesty*, __ W. Va. __, 297 S.E.2d 836 (1982) described the process as follows:

> The logging process begins by acquiring the right to cut and remove timber. The standing timber is called "stumpage." After a tree is cut down, a logger removes the limbs ("delimbing") and tree top ("topping") from the trunk. The remaining tree trunk is then taken to a central collection and loading area. At this time, the trunk is cut into smaller log sections. This process is referred to as "bucking." After bucking, the logs are loaded onto trucks and transported to a saw mill. After their arrival, bark is removed from the logs and they are either cut into lumber or used to manufacture wood chips.

*Burruss,* 297 S.E.2d at 837. The court went on to state that "bucking" is

the procedure in which trees are cut into logs of differing lengths in order to produce different products. For example, crossties, furniture veneer and plywood all require different lengths. Although other factors such as the quality of wood in a certain tree also determine the log length, it is clear that once bucking takes place, the available uses of the log have been greatly limited. Thus, bucking is the first conscious step in the preparation of the manufactured product.

*Burruss,* 297 S.E.2d at 839.

Under the logger's lien, persons who haul sawlogs, spars, piles, cordwood, shingle bolts, or other timber are entitled to a lien on the timber delivered. Webster defines the above words as follows: sawlog—"a log of suitable size for sawing into lumber"; spar—"a pole or moderately thick piece of timber"; pile—"a long slender member [usually] of timber . . ."; cordwood—"wood for fuel cut to the length of four feet so as to be readily measurable in cords"; bolts— "a block of timber to be sawed or cut (as into shingles or staves)". *Webster's Third New International Dictionary* (1971).

It appears that the items delineated in the statute are created in the "bucking" process of a logging operation. The specification of these items in the logger's lien statute merely reflects the Legislature's understanding of the logging process. The Legislature intended for loggers to have a lien upon the items they processed in the bucking process. Otherwise, loggers might not "buck" the logs into different sizes for fear of losing their lien. Since all the enumerated items appear to be the natural result of the "bucking" process, wood chips manufactured in a mill are not ejusdem generis with these items. Wood chips, therefore, must be considered lumber and not within the scope of the logger's lien.

In view of our holding, we do not consider Daishowa's other arguments: (1) that RCW 60.24.020 does not authorize a lien for interstate transport, and (2) that under

RCW 60.24.075, the lien was improperly filed in Whatcom County.

We affirm the trial court's judgment.

WILLIAMS and PEKELIS, JJ., concur.