# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| RENOVATIO, LLC, a Washington limited liability company, | No.  55847-5-II |
| Appellant, | |
| v. | |
| DATO SOH CHEE WEN, an individual; CAPRI INVESTMENTS, L.L.C., a Washington limited liability company; IPCO INTERNATIONAL LTD., a Singapore corp.; ASIA PLAN LTD, a BVI corporation; and NEPTUNE CAPITAL GROUP, LTD, a BVI Corp., | UNPUBLISHED OPINION |
| Respondents. | |

PRICE, J. — Renovatio, LLC (Renovatio) appeals the superior court's order granting summary judgment and dismissing its case that sought to enforce a series of promissory notes. The notes are related to the financing of a large development project by Capri Investments, LLC (Capri) and IPCO International, Ltd. (IPCO).  Capri and IPCO assert that the statute of limitations has run on most of the notes, making Renovatio's claims untimely.  Capri and IPCO also argue that Renovatio is not the beneficiary named on the notes and is not entitled to enforce them. Finally, Capri and IPCO argue the loans for the notes have been repaid.

Renovatio asks this court to reject Capri and IPCO's arguments, claiming its lawsuit is timely, it is entitled to enforce the notes, and money is owed.  Renovatio further argues that the superior court erred in its attorney fees award because the court failed to adequately reduce the award for unwarranted fees and failed to explain its decision.

We affirm the superior court's orders granting summary judgment and awarding attorney fees to Capri and IPCO. We also grant Capri and IPCO their attorney fees for this appeal.

FACTS

I. BACKGROUND

In 2002, Gerald Patrick Healy and Dato Soh Chee Wen began working together to develop a large property development called Falling Water, located in Bonney Lake, Washington.[1] Healy lived in Washington and oversaw the building and planning of Falling Water. Soh and Healy intended that Soh would finance Falling Water's development through the entity Capri, a limited liability company. In 2002, Capri purchased over 500 acres of land where Falling Water would be built. In 2003, Capri was acquired by codefendant IPCO, its present parent company.

In 2002, Soh was arrested in Malaysia for charges related to stock market manipulation. Soh was thereafter unable to finance the development of Falling Water, and he requested that Healy find financing elsewhere. Healy began gathering additional investors to provide loans to Capri to continue developing Falling Water. These additional investors led to a series of loans documented with multiple promissory notes.

II. PROMISSORY NOTES

One of the investors Healy approached was his brother. Healy's brother owned portions of companies called Landsail Investments, Inc. (Landsail) and Lodestar One, LLC (Lodestar). Landsail and Lodestar each made unsecured loans to Capri.

---

[1] Based on a review of the record, Dato Soh Chee Wen appears to prefer the surname of Soh. We therefore refer to him by that name.

No. 55847-5-II

Landsail and Capri executed promissory notes (Landsail Notes) detailing the terms of the loans. Landsail was the beneficiary on five notes executed and due on the following dates for the following amounts:

| Date of Note: | Date Payment was Due: | Note Amount |
|---|---|---|
| October 18, 2004 | November 1, 2005 | $423,154.40 |
| February 16, 2005 | September 16, 2005 | $282,403.62 |
| August 3, 2005 | September 3, 2005 | $147,680.00 |
| August 12, 2005 | September 12, 2005 | $309,984.92 |
| August 22, 2005 | September 22, 2005 | $156,307.72 |

Clerk's Papers (CP) at 956-60.

Lodestar and Capri also executed promissory notes (Lodestar Notes) detailing the terms of the loans from that company. Lodestar was the beneficiary on two notes executed and due on the following dates for the following amounts:

| Date of Note: | Date Payment was Due: | Note Amount |
|---|---|---|
| February 18, 2005 | September 18, 2005 | $78,000.00 |
| February 23, 2005 | September 18, 2005 | $52,000.00 |

CP at 966-67.

A third company, Westridge Development, LLC (Westridge), made loans to Capri for the project. Although there is conflicting evidence in the record about who owned Westridge, portions of the record reflect that Healy and Soh may have co-owned Westridge.[2] Westridge made a series of unsecured loans to Capri. Ultimately, Capri and Westridge executed five separate promissory

---

[2] Renovatio asserts that Healy and Soh each owned 50 percent of Westridge. However, Westridge's records show that either Capital Sino Consultants, Ltd. or Asia Plan, Ltd. owned 99 percent of Westridge. Capri asserts that Healy does not own any part of Westridge.

3

notes (Westridge Notes) detailing the terms of these loans. Westridge was the beneficiary on the following five notes:

| Date of Note: | Date Payment was Due: | Note Amount |
|---|---|---|
| June 22, 2005 | September 1, 2005 | $ 61,580.01 |
| November 11, 2005 | June 11, 2006 | $ 69,499.58 |
| March 16, 2006 | June 14, 2006 | $280,800.00 |
| March 9, 2007 | July 9, 2007 | $ 83,200.00 |
| April 17, 2007 | August 15, 2007 | $ 26,000.00 |

CP at 961-65, 971.

Healy also approached a business associate, William Hurme, to help finance Falling Water. Healy and Hurme had worked together on development projects in the past. Renovatio alleges that the Healy family provided funding for around 85 percent of two loans, and Hurme provided funding for the other 15 percent of the loans. Capri and Hurme executed two promissory notes (Hurme Notes) detailing the terms of these loans. Only Hurme appears on the Hurme Notes as a named beneficiary; Healy's name does not appear on the Notes. The Hurme Notes were executed and due on the following dates for the following amounts:

| Date of Note: | Date Payment was Due: | Note Amount |
|---|---|---|
| May 10, 2006 | August 10, 2006 | $1,040,000.00 |
| May 24, 2006 | September 10, 2007 | $ 104,000.00 |

CP at 209-210, 1077.

All of the notes included a provision enabling the beneficiary to recover attorney fees in a lawsuit for collection on the note.

### III. FORMING OF RENOVATIO AND AMENDED COMPLAINT

In March 2019, Healy formed Renovatio as a limited liability company. Healy and his wife are the only members of Renovatio.

Two months later, Renovatio filed this lawsuit against Capri and IPCO, seeking enforcement of all the notes. An amended complaint was filed six months later. In addition to suing on the notes, Renovatio asserted claims against Soh and related entities and included additional equitable claims against all defendants, such as unjust enrichment, imposition of a constructive trust, promissory estoppel, and quantum meruit.

Capri and IPCO answered and filed a third-party complaint against Healy, alleging damages for unjust enrichment, conversion, breach of fiduciary duties, and undue influence.[3]

### IV. SUMMARY JUDGMENT

In March 2021, Capri filed a motion for partial summary judgment, seeking dismissal of all of Renovatio's claims against them. With evidence outlined below, Capri argued that the statute of limitations made the claims untimely on all but the Hurme Notes and that Renovatio was not a party entitled to enforce the notes.

#### A. STATUTE OF LIMITATIONS

Capri argued the statute of limitations ran on the Landsail, Lodestar, and Westridge Notes (non-Hurme Notes) well before Renovatio filed suit because Capri made its last payment on any non-Hurme Notes in 2007. To support its argument, Capri relied on its QuickBooks records from

---

[3] Although Capri and IPCO remain separate entities, we hereafter refer to them collectively as "Capri" for simplicity and because their interests are aligned on the relevant issues.

No. 55847-5-II

2002 to 2007, which contained the following entries identifying outgoing payments to Landsail, Lodestar, and Westridge:

| Date | Check No. | Payment Recipient | Transaction Memo[4] | Amount |
|------|-----------|-------------------|---------------------|--------|
| 08/09/2005 | 1380 | Landsail | n/a | $147,680.00 |
| 08/31/2005 | 1394 | Landsail | n/a | $    1,262.36 |
| 10/14/2005 | 1432 | Landsail | n/a | $125,000.00 |
| 01/06/2006 | 1478 | Westridge | n/a | $ 75,000.00 |
| 04/26/2006 | 1548 | Landsail | Partial Payment of | $ 65,000.00 |
| 11/08/2006 | 1655 | Westridge | Partial Repayment of | $ 55,000.00 |
| 11/21/2006 | 1659 | Westridge | Partial Repayment of | $200,000.00 |
| 01/12/2007 | 1713 | Westridge | Final Payment of PN | $ 65,040.99 |
| 01/31/2007 | 1721 | Landsail | Partial Repayment of | $ 25,000.00 |
| 07/17/2007 | 1817 | Landsail | Final Payment of 2/26 | $184,710.29 |
| 07/17/2007 | 1814 | Lodestar | Final Payment of 2/18 | $ 97,948.44 |
| 07/17/2007 | 1815 | Lodestar | Final Payment of Orig | $ 68,848.31 |
| 07/17/2007 | 1816 | Westridge | Final Payment of 3-9 | $ 82,700.88 |
| 07/17/2007 | 1820 | Westridge | Final Payment of 4-17 | $ 25,593.73 |

CP at 628-31, 633, 637, 639, 642.

---

[4] Capri's QuickBooks printout records contains a column for "transaction memo," presumably designed to capture commentary about each payment. However, the transaction memo columns in the records appear to be incomplete. This table includes the partial information as it exists on the records.

Capri also relied on records produced by Renovatio in discovery that purport to show a summary of loans made to Capri, dated March 11, 2007. The records appear to show note renegotiations when Capri could not repay some notes in full, as well as the tracking of outstanding balances for the loans. The records also appear to show payment amounts for partial payments on loans, including check numbers for some of those payments.

Capri further relied on other records produced by Renovatio that purport to show Falling Water's outstanding invoices through July of 2007 and note renegotiations and payments that Capri made on the notes until the end of 2007. None of the records showed any payments made on the non-Hurme Notes after 2007.

Renovatio responded that the statute of limitations was extended by partial payments. Renovatio supported its argument with receipts from bank transfers to Healy personally. The receipts appear to show that the last of these transfers occurred in June 2016. The bank transfers appear to be from nonparties, such as Neptune Capital Group, Ltd. via Neo Kim Hock, Powerlite Ventures Ltd., and James Hong. Most payments ranged from $3,000 to $12,000, with the largest payment being for $90,000. The receipts document periodic payments, with no regularity.

Renovatio also relied on emails that Healy sent to Soh from 2010 to 2016, in which Healy asserted money was owed on the notes and requested payment. Renovatio further relied on emails received by Healy in which Soh stated that he would remit payments to Healy.

Capri replied that Renovatio's evidence did not prove these payments were payments on the non-Hurme Notes. As Capri observed, Renovatio's bank receipts showed all post-2007 payments were made to Healy personally. Further, the payments appeared to be made by third parties, not Capri. Some of the receipts also included details showing the payments were for

"consultant fees." *E.g.*, CP at 1233. And, according to some of Healy's emails, some of the payments were allocated to Healy's personal expenses.

B. PERSON ENTITLED TO ENFORCE

Capri also asserted that because Renovatio was never listed as a beneficiary of any of the notes, it was not entitled to enforce any of them as the *person entitled to enforce*, also known as a "PETE."[5] Specific to the Hurme Notes, Capri argued that Renovatio was not entitled to enforce them because Hurme, himself, had renegotiated and settled the payoff of the Hurme Notes through a Forbearance Agreement. The Forbearance Agreement discharged Capri's debt on the Hurme Notes and detailed that Hurme would receive three installment payments to repay the debt. Because Hurme was the sole beneficiary listed on the Hurme Notes, only Hurme, not Renovatio, could enforce the Hurme Notes.

Renovatio countered that it was actually the holder of all the notes and, therefore, entitled to enforce all of them. Renovatio relied on a declaration made by Healy that attached a 2017 email exchange between Healy and the manager of Capri, James Blythman. In the exchange, Healy asserts that he possessed all of the original notes.

As to the Hurme Notes, Renovatio argued it was entitled to enforce them because Healy jointly funded the Notes and because of promises made by Soh. Specifically, Renovatio introduced the emails sent by Healy in which he asserts that either the Healy family or Westridge funded 85 percent of the Hurme Note loans. It also introduced additional emails from Healy to Soh and other people associated with Capri in which Healy told Soh and the others that Healy was

---

[5] The PETE for a promissory note is the person entitled to sue in their own name to seek enforcement of the note. *Brown v. Dep't of Commerce,* 184 Wn.2d 509, 524, 359 P.3d 771 (2015).

concerned Hurme would try to negotiate the Hurme Notes without involving Healy in spite of Healy's significant role in funding the Notes.[6]

## V. SUPERIOR COURT DECISION AND ATTORNEY FEES

On May 12, 2021, the superior court granted partial summary judgment for Capri, dismissing all of Renovatio's claims against Capri and IPCO. Some claims still remained pending against other third-party defendants.

Under the attorney fees provisions of the notes, Capri requested an award of attorney fees in the amount of $116,901.85. The superior court awarded Capri attorney fees, but reduced the amount to the round number of $70,000. The superior court explained:

> I went over very carefully the fee petition. I took off the top all of the fees related to the unsuccessful motion to dismiss. That was close to $14,000 in fees on that motion. That motion was denied. After that, it was an amended complaint.
>
> I also took into account that some of the claims in this case were not related to the promissory note. Ultimately, it's the [c]ourt's authority to award a fee that is reasonable. And I have determined that a reasonable fee in this case is $70,000, and that's what I'm going to allow. And that will be added and can be the subject of appeal.
>
> . . . .
>
> I've reduced them to $70,000. That reduction reflects what I believe is a reasonable fee on the successful claims that do allow for fees, and minimizes any duplication of effort on -- and fees incurred on unsuccessful arguments. So $70,000 is found by this [c]ourt to be reasonable, taking into account the complexity of this case. That is equivalent to an award of approximately 200 hours of legal work at a collective average rate of $350 per hour, which I consider to be reasonable.

---

[6] In addition to the above-described arguments, Capri argued that almost all of the notes were unenforceable because they were either paid in full or not signed. Capri's evidence, derived from QuickBooks, Capri loan documents, and Falling Water outstanding invoices, purported to show that most of the notes were paid-off. Renovatio provided declarations challenging those conclusions and argued that there were issues of material fact as to whether the notes were fully paid.

2 Verbatim Report of Proceedings (VRP) at 10-11.

The superior court's written order included handwritten edits stating the superior court found 200 hours at $350 per hour to be reasonable and awarded $70,000, but did not include other findings or conclusions explaining in detail the deductions that led to the amount.

## VI. APPEAL

Although some claims remained in Renovatio's lawsuit, the parties stipulated to a CR 54(b) certification to make the superior court's May order a final judgment. The superior court granted the request on June 16, 2021. Renovatio immediately appealed to this court.

## ANALYSIS

### I. LEGAL PRINCIPALS

#### A. SUMMARY JUDGMENT STANDARD

We review a superior court's grant of summary judgment de novo. *Crisostomo Vargas v. Inland Washington, LLC*, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019). Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Meyers v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue controlling the outcome of the litigation. *Sartin v. Est. of McPike*, 15 Wn. App. 2d 163, 172, 475 P.3d 522 (2020), *review denied*, 196 Wn.2d 1046 (2021). When determining whether to grant summary judgment, we view all facts and inferences in the light most favorable to the nonmoving party. *Id.*

Summary judgment is subject to a burden-shifting scheme. *See Id.* The moving party first bears the burden of showing the absence of an issue of material fact. *Id.* "A moving defendant

can meet this burden by demonstrating the plaintiff cannot support his claim with any evidence." *Id.*

The burden then "shifts to the plaintiff to present specific facts that reveal a genuine issue of material fact." *Id.* "Summary judgment is appropriate if a plaintiff fails to show sufficient evidence that creates a question of fact about an essential element on which he or she will have the burden of proof at trial." *Id.* "The nonmoving party may not rely on speculation or argumentative assertions that unresolved factual issues remain." *Little v. Countrywood Homes, Inc.*, 132 Wn. App. 777, 780, 133 P.3d 944, *review denied*, 158 Wn.2d 1017 (2006).

B.  PROMISSORY NOTES AND PETE STATUS

A "promissory note" is "an instrument that evidences a promise to pay a monetary obligation, does not evidence an order to pay, and does not contain an acknowledgment by a bank that the bank has received for deposit a sum of money or funds." RCW 62A.9A-102(65).

Promissory notes embrace two sets of rights under the Uniform Commercial Code (UCC)[7]. *Brown v. Dep't of Commerce,* 184 Wn.2d 509, 524, 359 P.3d 771 (2015). The first is the party entitled to sue on the note in its own name, also known as the PETE. *Id.* "The second set of rights is ownership of the note." *Id.* The owner only has rights in the economic benefits to the note. *Id.*

RCW 62A.3-301 authorizes three categories of PETEs:

---

[7] Title 62A RCW.

(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309 or 62A.3-418(d).[8]

The "holder" is the "person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." RCW 62A.1-201(21)(A).

*Brown* further explains:

> The first method to gain PETE status is to be "the holder of the instrument." [RCW 62A.3-301(i)]. . . . The statute's definition of "holder" does not turn on ownership. That is unsurprising, given that the statute expressly provides that "[a] person may be a person entitled to enforce the instrument[, a PETE,] *even though the person is not the owner* of the instrument." RCW 62A.3-301 (emphasis added). . . . [A] holder "may sue in his or her own name to enforce payment even though he or she is not the owner of the instrument." 6B ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3-301:4R at 267 (Lary Lawrence ed., 3d ed., 2003 rev.). This rule focuses on the party who possesses the note in order to protect the borrower from being sued fraudulently or by multiple parties on the same note. 5A ANDERSON ON THE UNIFORM COMMERCIAL CODE § 3-207:7 at 449 (Ronald A. Anderson ed., 3d ed., 1994 rev.) ("The purpose of requiring that the plaintiff have possession of the paper is to protect the defendant from multiple liability.").

184 Wn.2d at 525-26 (some alterations in original) (footnotes and some citations omitted).

The PETE for a promissory note is the party who may modify or discharge the note. RCW 62A.3-604(a); *see also Brown*, 184 Wn.2d at 526 ("PETE status triggers key consequences under article 3 of the UCC. . . . As a consequence, the PETE may modify and discharge the note.").

Transfers of promissory notes are addressed in RCW 62A.3-203. "An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the

---

[8] Not relevant here, RCW 62A.3-309 allows enforcement of an instrument by a person not in possession of the instrument if it was stolen, lost, or destroyed. RCW 62A.3-418(d) allows enforcement by a person not in possession of an instrument when payment or acceptance of the instrument was made by mistake and the mistaken payment is recovered or the mistaken acceptance was revoked. Renovatio does not assert that it may enforce the notes based on either of these subsections.

person receiving delivery the right to enforce the instrument." RCW 62A.3-203(a). "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course . . . ." RCW 62A.3-203(b).

The language of RCW 62A.3-203(b) allows an assignee of a note to enforce the note. *Fed. Fin. Co. v. Gerard*, 90 Wn. App. 169, 177, 949 P.2d 412, *review denied*, 136 Wn.2d 1025 (1998). "An assignee of a contract 'steps into the shoes of the assignor, and has all of the rights of the assignor.' " *Id.* (quoting *Est. of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 495, 844 P.2d 403 (1993)). Additionally, "the assigned rights include not only those identified in the contract, but also applicable statutory rights." *Id.*

II. STATUTE OF LIMITATIONS ON LANDSAIL, LODESTAR, AND WESTRIDGE NOTES

Capri argues that Renovatio is barred by the statute of limitations from suing to enforce the Landsail, Lodestar, and Westridge Notes (all except the Hurme Notes). Renovatio responds that partial payments to Healy tolled the statute of limitations on these Notes. We agree with Capri.

Promissory notes are subject to a six-year statute of limitations. RCW 4.16.040; *see Alpacas of Am., LLC v. Groome,* 179 Wn. App. 391, 399, 317 P.3d 1103 (2014); RCW 62A.3-118. The statute of limitations begins to run when payment is due on the note. *Westar Funding, Inc. v. Sorrels*, 157 Wn. App. 777, 785, 239 P.3d 1109 (2010).

When late payments are made on a promissory note, the statute of limitations restarts at the date of the payment. RCW 4.16.270. A payment on a promissory note is made when the payment is "made (i) by or on behalf of a party obligated to pay the instrument, and (ii) to a person entitled to enforce the instrument." RCW 62A.3-602(a). "When the borrower pays the PETE—and *only*

when the borrower pays the PETE—the borrower's obligation is discharged." *Brown*, 184 Wn.2d at 527; *see* RCW 62A.3-602(a).

If the debtor makes no direction at the time of payment to the application of the payment, the creditor has the right of application at any time "until the account is settled or suit is brought." *Yancovich v. Cavanaugh Lumber Co*., 20 Wn. App. 347, 349-50, 581 P.2d 1057 (1978); *Oakes Logging, Inc. v. Green Crow, Inc*., 66 Wn. App. 598, 601-02, 832 P.2d 894 (1992). When neither the debtor nor creditor seasonably exercise its power to apply the payment to one of multiple debts, the payment is applied to the oldest debt. *Oakes Logging*, 66 Wn. App. at 602.

A corporation is a distinct and separate entity from its shareholders and officers. *Grayson v. Nordic Const. Co.*, 92 Wn.2d 548, 552, 599 P.2d 1271 (1979). The corporation remains a separate entity even when there is only one shareholder or member. *Truckweld Equip. Co. v. Olson*, 26 Wn. App. 638, 644, 618 P.2d 1017 (1980). A "shareholder 'cannot employ the corporate form to his advantage in the business world and then choose to ignore its separate entity when he gets to the courthouse.' " *Zimmerman v. Kyte*, 53 Wn. App. 11, 18, 765 P.2d 905 (1988) (quoting 12B W. FLETCHER, PRIVATE CORPORATIONS § 5910 (1984)).

Here, Capri argues that the statute of limitations has run on all of the notes, except the Hurme Notes. Because it made its final payments on all of the non-Hurme Notes before 2008, Capri contends the six-year statute of limitations ran prior to 2014, well before Renovatio filed its complaint in 2019. It contends that any later payments do not effectively toll the statute of limitations because the later payments were not made by the debtor, Capri, to any of the PETEs of the non-Hurme Notes.

Renovatio responds that the statute of limitations has not run because numerous other payments were made well after 2008 that tolled the six-year time to sue. In support, Renovatio provided evidence of payments from third parties to Healy personally throughout the years of 2008 to 2016. Specifically, Renovatio provided receipts from bank transfers that name Healy as the party receiving the transfers. Renovatio also submitted declaration testimony from Healy stating that he was repeatedly requesting that Soh make payments for the debt on all of the notes during this time period and, as a result, the payments he received should be considered payments on the non-Hurme notes.

Renovatio's evidence is unpersuasive. In order to effectively toll the statute of limitations, Renovatio must prove payments made *by* the debtor on the non-Hurme notes *to* the PETE of the notes. Renovatio, however, has not proven *any* payments by Capri, the entity owing on the notes. Nor does Renovatio prove any payments *to* Landsail, Lodestar, or Westridge after 2007, only payments to Healy personally.[9]

Because payment must be made *by* the debtor *to* the PETE, and Capri made no payments after 2007 and Healy is not the beneficiary listed on the notes, these post-2007 payments to Healy do not qualify as payments on the notes. Without there being any effective payments on the

---

[9] The payments Healy received were not earmarked for any particular note. Even so, Renovatio asserts because Healy could "credit the payments generally," he was entitled to allocate payments made directly to him to any of the corporate entities. Appellant's Opening Br. at 27. Renovatio, however, has not provided any evidence that Healy actually applied the payment to a balance of any specific promissory note. Renovatio's evidence shows that Healy solicited at least some of these payments for, and applied them to, his own personal debts and bills, and did not allocate the payments back to Landsail, Lodestar, or Westridge. Moreover, the receipts submitted by Renovatio state that some of the post-2007 payments were for consulting fees for work that Healy had done as opposed to payment on the notes.

non-Hurme Notes after Capri's final payments in 2007, the statute of limitations was not tolled. Accordingly, Renovatio's 2019 lawsuit for these notes was untimely.

Renovatio essentially argues this result is form over substance. It accuses Capri of advancing arguments that are "hyper-technical, 'dance on the head of a pin' " defenses when the reality is:

> the loans in question were private loans made by the Healy family. None of the loans were transferred, sold, or assigned outside the Healy family, and payments remain[] owing. Mr. Healy and the Healy entities are the same parties in interest, and there is no danger of Respondents being exposed to "fraudulent" claims on the Promissory Notes from anyone other than the original lenders.

Reply Br. of Appellant at 1, 3.

But Renovatio ignores the importance of corporate formalities, even in the context of closely-held entities. Healy and his family deliberately chose to organize their business affairs with the use of limited liability entities. Requiring the payments on these non-Hurme Notes be analyzed consistently with corporate formalities is not "hyper-technical," rather it is consistent with legal expectations when these forms are chosen. Had Healy and his family wanted to avoid the complexities inherent in corporate formalities (complexities such as insisting on formal issuance of payments from Capri or directing payments to be made formally to the order of corporate note holders), other financing options could have been attempted without the use of corporate entities. But having availed themselves of the advantages of doing business in the corporate form, those forms may not be ignored for convenience. *See Zimmerman*, 53 Wn. App. at 18 (shareholders may not avoid the corporate form at the courthouse having chosen to employ the corporate form in the business world).

Because Renovatio has not shown that there were any effective payments on the Landsail, Lodestar, or Westridge Notes after 2007, Renovatio has not shown that there is a genuine issue of material fact regarding the statute of limitations for these Notes. Because the statute of limitations has run on all of the non-Hurme Notes, the superior court did not err in dismissing Renovatio's claims related to them.

### III. RIGHT TO ENFORCE THE HURME NOTES

Following this conclusion, only the Hurme Notes remain. For these notes, Capri argues that Renovatio is not the PETE. Capri argues that Hurme, and only Hurme, was ever the holder and PETE of the Hurme Notes and, therefore, Renovatio has no entitlement to sue to collect.

Renovatio responds that it is entitled to enforce the Hurme Notes because Healy co-funded the loans with Hurme and a partnership was created. Healy also received assurances that defendants knew Healy had contributed to the funding of the Hurme Notes, and Soh promised Healy he would not make any unilateral arrangements with Hurme to compromise Healy's position. We agree with Capri that Renovatio is not entitled to enforce the Hurme Notes.

A partnership is " 'created whenever two or more persons agree to carry on a business and share in profits and ownership control.' " *Curley Elec., Inc. v. Bills*, 130 Wn. App. 114, 118, 121 P.3d 106 (2005) (quoting 1B KELLY KUNSCH, WASHINGTON PRACTICE: METHODS OF PRACTICE § 67.2, at 37 (4th ed. Supp.2005)), *review denied*, 158 Wn.2d 1007 (2006); RCW 25.05.055(1). "The burden of proving a partnership is on the party asserting its existence." *DeFelice v. Emp't Sec. Dep't*, 187 Wn. App. 779, 788, 351 P.3d 197 (2015). "A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment . . . [o]f a debt . . . ." RCW 25.05.055(3)(c)(i).

17

When "a partner acts within the scope of the partnership business, the partner expands liability." *Gildon v. Simon Prop. Grp., Inc.*, 158 Wn.2d 483, 498, 145 P.3d 1196 (2006) (emphasis omitted). Each partner may act within the scope of business, thereby risking the partnership's assets and creating liability for their copartners. *Id.* A partner owes a fiduciary duty of loyalty and care to other partners. RCW 25.05.165. Partners "may maintain an action against . . . another partner for legal or equitable relief" to enforce their rights owed to them as a result of the fiduciary duty. RCW 25.05.170(2)(b)(i); RCW 25.05.165.

Here, Renovatio argues it is entitled to enforce the Hurme Notes for two overlapping reasons. First, it alleges Healy and his family contributed the majority of the funding for the Hurme Notes. Renovatio's evidence states that the Healy family contributed 85 percent of the total amount of the two Hurme Notes, and Hurme contributed only 15 percent. Renovatio further contends that Healy repeatedly informed Soh about this large disparity in the contributions represented by the Hurme Notes and urged Soh not to negotiate solely with Hurme for repayment of the notes.

Second, due to the joint-contribution to the Hurme Notes, Renovatio argues Healy and Hurme formed a non-trading partnership. This partnership, according to Renovatio, prevented Hurme from negotiating the payment of the Hurme Notes through the Forbearance Agreement. It asserts that unauthorized acts of a partner in a non-trading partnership that are outside of the scope of the partnership do not bind the other partners. Thus, Renovatio should not be bound by the settlement of the Hurme Notes through this agreement.

Renovatio's position is unavailing. First, Renovatio provides no authority that jointly funding a loan would somehow create PETE status under the resulting Hurme Notes, or otherwise

alters in any meaningful way the developed body of law governing PETE status. When no authority is provided to support a party's position, we are not required to search out authorities and may assume that none was found after a diligent search. *In re Discipline of Jensen*, 192 Wn.2d 427, 440, 430 P.3d 262 (2018); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (failure to provide argument and citation to authority in support of an assignment of error precludes appellate consideration under RAP 10.3(a)(6)).

In fact, despite the alleged joint-funding of the loan, for whatever reason, only Hurme has ever been named beneficiary of the Hurme Notes. Renovatio does not explain how Healy or the Healy family is a PETE on the Hurme Notes when Hurme has always been the only name on the notes (and there is no evidence Hurme has ever deliberately transferred possession of the notes to anyone). *See* RCW 62A.1-201(21)(A) (when the note is made out to a specific person or entity, that person is the holder). Simply put, the Healy family cannot be the holder of the Hurme Notes without evidence of transfer from Hurme—evidence that is absent here.

Renovatio's claims for enforcement of the Hurme Notes through partnership law is similarly unpersuasive. Again, Renovatio provides no authority that jointly funding a loan, even if some version of a partnership is created, would create PETE status for the Healy family on resulting notes. *Cowiche Canyon Conservancy*, 118 Wn.2d at 809 (failure to provide authority in support of an argument precludes appellate consideration). Renovatio also fails to show how Hurme's renegotiation of the Hurme Notes with Capri would be outside the scope of the partnership business, assuming such a partnership was created, when he was the sole beneficiary listed on the Notes.

UCC law is clear, a PETE may modify and discharge a note. RCW 62A.3-604(a). Renovatio has not established that anyone other than Hurme was the PETE for the Hurme Notes. As the only PETE, Hurme was entitled to compromise and settle the Hurme Notes with Capri through the execution of the Forbearance Agreement. Even assuming a partnership was created between Healy and Hurme, whatever remedy Healy (or Renovatio) may have for an alleged violation of partnership duties by Hurme, it would not be the creation of separate PETE status for Healy.[10]

Because Renovatio has failed to prove that it may enforce the Hurme Notes, Capri is entitled to summary judgment for the Hurme Notes. Coupling this conclusion to the dispositive effect of the statute of limitations on the non-Hurme Notes, we hold that the superior court did not err in granting summary judgment to Capri.[11]

## IV. ATTORNEY FEES

Renovatio argues that the superior court erred in its attorney fees award to Capri, not only because it should have prevailed below, but also because the superior court's award was too high and it failed to adequately explain its decision. Capri responds that the superior court did not err in the amount of the attorney fees award, and the superior court sufficiently explained itself. Capri further requests attorney fees for this appeal. We affirm the superior court's award of attorney fees and further award Capri attorney fees for this appeal.

---

[10] Presumably, claims for damages resulting from a breach of fiduciary duties by Hurme, if any exist, would need to be brought against Hurme personally, not against Capri. *See* RCW 25.05.170.

[11] Having concluded that Capri is entitled to summary judgment on the above-discussed grounds, we need not address Capri's additional arguments, including that Renovatio is not the PETE for the Lodestar, Landsail, and Westridge Notes and that the underlying loans for the notes have all been repaid.

20

A. ATTORNEY FEES FOR SUMMARY JUDGMENT

Renovatio argues that the superior court abused its discretion in both the amount of attorney fees awarded to Capri and its failure to sufficiently explain its reasoning. Capri argues that the superior court did not abuse its discretion because it undertook a detailed review of the amount of hours and hourly rate originally billed and reasonably reduced the amount. We agree with Capri.

We review the reasonableness of an attorney fees award for abuse of discretion. *Park Place Motors, Ltd. v. Elite Cornerstone Constr., LLC*, 18 Wn. App. 2d 748, 753, 493 P.3d 136 (2021). "To reverse an attorney fee award, we must find the trial court exercised its discretion on untenable grounds or for untenable reasons." *Miller v. Kenny*, 180 Wn. App. 772, 820, 325 P.3d 278 (2014).

"The [superior] court uses the lodestar calculation to determine reasonable attorney fees." *Ewing v. Glogowski*, 198 Wn. App. 515, 521, 394 P.3d 418 (2017). "The 'lodestar' is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* "The requesting attorney must provide reasonable documentation of the work performed." *Id.* The superior court " 'should therefore discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time.' " *Id.* (quoting *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 597, 675 P.2d 193 (1983)). But "[a] trial court does not need to deduct hours here and there just to prove to the appellate court that it has taken an active role in assessing the reasonableness of a fee request." *Miller*, 180 Wn. App. at 823.

"[A]ppellate courts will ordinarily defer to the trial court's discretion, especially in complex cases." *Id*. at 824-25. " 'The issue before us is not whether we would have awarded a different amount, but whether the trial court abused its discretion.' " *Id.* (quoting *Chuong Van Pham v. City of Seattle*, 159 Wn.2d 527, 540, 151 P.3d 976 (2007)).

Here, the superior court reduced Capri's requested amount of $116,901.85 to a round $70,000. Renovatio contends that the superior court erred in this overall amount of attorney fees because it did not sufficiently parse out the fees accumulated for contractual issues and did not remove the time that was duplicative. Renovatio also claims there is an absence of detailed findings and round numbers are indicators of a failure to conduct a sufficient lodestar analysis.

However, a complete review of the record shows that, notwithstanding the round final numbers, the superior court sufficiently engaged in the lodestar analysis by adequately analyzing billings and reducing the overall amounts consistent with its assessment of appropriate fees. The record shows that the superior court removed time that was charged for activities it assessed as duplicative and unsuccessful. The superior court explained that it "went over very carefully the fee petition" and determined that 200 hours of legal work at $350 per hour was a reasonable fee on the successful claims and "minimizes any duplication." 2 VRP at 11. The superior court's written order contains handwritten edits repeating its decision under a lodestar calculation that 200 hours at $350 was a reasonable fee for claims related to the notes. The superior court's calculations show that it did not abuse its discretion in its award of attorney fees to Capri. Accordingly, we affirm the superior court's award of attorney fees.

B. ATTORNEY FEES ON APPEAL

Capri argues that they are entitled to attorney fees on appeal. We agree.

RAP 18.1 grants this court the ability to award attorney fees if applicable law allows. Attorney fees may be awarded at the appellate level only when authorized by a contract, a statute, or a recognized ground of equity. *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 839, 100 P.3d 791 (2004). RCW 4.84.330 authorizes the award attorney fees to the prevailing party for written

contracts if the contract includes a provision unilaterally allowing one party to recover attorney fees. The prevailing party may recover attorney fees whether or not they were the party that the contract specified could recover attorney fees. RCW 4.84.330.

Here, each of the notes at issue included a provision allowing the beneficiaries on those notes to recover attorney fees, authorizing our award of attorney fees to the prevailing party. Because Capri remains the prevailing party for this appeal, we award Capri its attorney fees for the appeal.

V. MOTION FOR SANCTIONS

While the case was pending before this court, Capri moved for sanctions against Renovatio and its counsel for what it characterized as defrauding this court through the filing of false declarations and failing to adequately investigate its case. Renovatio denies the allegations and requests we reject the motion.

Capri's motion for sanctions is not clearly without merit. However, because we affirm the superior court's granting of summary judgment to Capri and have already awarded Capri its fees on appeal, we decline to assess further sanctions against Renovatio.

CONCLUSION

We affirm the superior court's orders granting summary judgment and awarding attorney fees to Capri and IPCO. We additionally award Capri and IPCO attorney fees for this appeal.

No. 55847-5-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, A.C.J.

WORSWICK, J.